Donna MASTRONI–MUCKER, Charles Mucker, and Joanne Mastroni–Morton, Appellants

v.

ALLSTATE INSURANCE COMPANY and Mastroni Brothers Roofing, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 4, 2009.

Filed May 29, 2009.

Reargument Denied Aug. 3, 2009.

Lynda R. O'Brien, Philadelphia, for appellant.

Bernard J. McLafferty, Erdenheim and Glenn A. Ricketti, Philadelphia, for appellee.

BEFORE: ORIE MELVIN, BOWES and DONOHUE, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 This is an appeal from an Order entered October 31, 2007, denying Appellants', Donna Mastroni–Mucker, Charles Mucker and Joanne Mastroni–Morton, post-trial motion to enforce settlement against Appellees, Allstate Insurance Company[1] and Mastroni Brothers Roofing (Mastroni Brothers).[2] For the reasons that follow, we reverse the Order denying enforcement of the settlement, and vacate the judgment entered on November 20, 2007.

¶ 2 The facts and procedural history may be summarized as follows. On March 28, 2005, Appellants filed a civil complaint for breach of contract and negligence against Allstate and the Mastroni Brothers for damages that occurred to their home and the subsequent loss of use thereof, following the allegedly defective installation of a new roofing system. On June 8, 2007, a jury was empanelled and trial began. Until the first few days of trial, Mastroni Brothers was solely represented by Glenn Ricketti, Esquire, and Appellants were represented by Lynda O'Brien, Esquire. However, due to an assortment of coverage disputes that existed between the Mastroni Brothers and its insurer, Donegal Mutual Insurance Company (Donegal), D. Scott Bonebrake, Esquire, entered his appearance on behalf of Donegal. A Petition to Intervene on behalf of Donegal was subsequently filed and granted on the last day of trial. Additionally, on June 15, 2007, Bernard J. McLafferty, Esquire entered his appearance as personal counsel for the owners of Mastroni Brothers in their individual capacities.

¶ 3 On Thursday, June 14, 2007, following the conclusion of the proceedings for that day Attorney Ricketti offered $45,000.00 to settle the case. The following morning, Ms. O'Brien advised Mr. Ricketti that her clients had rejected that offer. On June 15, 2007, the trial proceeded through presentment of closing arguments by the defense, and the court recessed for lunch prior to allowing rebuttal

---

**1.** The suit against Allstate, as the provider of Appellants' homeowners insurance coverage, was dismissed with prejudice by stipulation on June 7, 2007, and the trial proceeded solely against the Mastroni Brothers.

**2.** In addition to denial of Appellants' post-trial motion, the trial court also entered the verdict in favor of the Mastroni Brothers that was returned on June 15, 2007, and judgment was subsequently entered on that verdict on November 20, 2007. Therefore, this appeal is properly before this Court.

argument by Appellants' counsel. During the one hour lunch break, Mr. Ricketti increased the Mastroni Brothers' offer to $60,000. After discussing the offer with her clients, Ms. O'Brien informed the Mastroni Brothers' counsel that her clients accepted the offer of $60,000 to settle the case. Just prior to the return of the jury from its lunch break, the following colloquy took place on the record at 1:30 p.m.:

MR. RICKETTI: Your Honor, we may have a settlement.

THE COURT: You either do or don't. It's like being pregnant.

MR. RICKETTI: I was just going to make one phone call back to the insurance company to confirm everything and it may be settled. If I could have a few minutes.

THE COURT: Sure. I will start— Charles, no, no. Bring the jury in at a quarter to 2:00.

MR. RICKETTI: I can get Mr. Bonebrake out, and she can start—

THE COURT: We're going to bring the jury in at a quarter to 2:00. Unless you tell me it's settled, we'll proceed.

(Whereupon an off-the-record discussion was held.) (Whereupon a short recess was taken.) (The following transpired in open court outside the presence of the jury:)

MS. O'BRIEN: Your Honor, Your Honor, until this is resolved—

THE COURT: Excuse me?

MS. O'BRIEN: Until—

THE COURT: We're back in session. Yes.

MR. RICKETTI: Your Honor, the defendants have extended an offer of $60,000 in monetary compensation to the plaintiffs in exchange for a full general release of the Mastroni Brothers, Inc., Mastroni Brothers Roofing, William Mastroni and Frank Mastroni, and also an indemnification and defense in the release for any future claims.

THE COURT: Is the case settled or not?

MR. RICKETTI: In exchange for $60,000. It's all just happening now, Your Honor.

THE COURT: Is it settled?

MS. O'BRIEN: For a general release with the—

MR. McLAFFERTY: General release and indemnification for all fees or claims. We don't want any claims by any future owner coming against Mastroni Brothers. For that payment, they want out of this totally.

MS. O'BRIEN: It's agreed.

THE COURT: The case is settled?

MS. O'BRIEN: Yes, Your Honor.

THE COURT: Your clients understand that?

MS. O'BRIEN: Yes, sir.

THE COURT: Your clients approve it?

MR. MUCKER: Yes, sir.

MR. McLAFFERTY: Where's Donna?

THE COURT: I'm asking you [referring to Ms. O'Brien]. Your clients approved it?

MS. O'BRIEN: Yes, sir.

THE COURT: Is the case settled, Counsel? MR. RICKETTI: Yes, Your Honor.

THE COURT: Is the case settled, Counsel?

MR. McLAFFERTY: As far as I'm concerned, Your Honor. But Donna is not here, and during earlier discussions all she did was kept shaking her head no. I want to make sure she's on board here, on the same page.

THE COURT: Okay. What are the terms of the general release? Standard general release; is that what we're talking about?

MR. RICKETTI: Yes, Your Honor.

THE COURT: Is that what we're talking about?

MS. O'BRIEN: I don't—I would like to see the general release.

THE COURT: Then the case isn't settled. Bring in the jury, Charles. We're up to rebuttal. As far as I'm concerned, we are a matter of hours away from a verdict or at least a day away from the verdict, and if there's any ambiguity, I'm going to take the verdict. You can settle it after verdict as easily as before verdict. This thing is either totally settled without any possibility of coming back or it's not. I'm not going to have an ambiguous situation when we're moments away from the jury rendering a verdict.

MS. O'BRIEN: Your Honor, if I can have a minute to speak with Mr. Ricketti.

THE COURT: You can have a minute, but we're up to rebuttal.

MS. O'BRIEN: Can I speak to Mr. Ricketti?

THE COURT: Sure.

MS. O'BRIEN: Thank you.

(Whereupon an off-the-record discussion was held.) (Whereupon the jury entered the courtroom at 1:42 p.m.)

COURT CRIER: Court is back in session.

THE COURT: Good afternoon, ladies and gentlemen.

JURY PANEL: Afternoon.

THE COURT: Counsel, do you choose to have five minutes of rebuttal argument?

MS. O'BRIEN: Your Honor—

THE COURT: Do you choose to have five minutes of rebuttal argument?

MS. O'BRIEN: Yes—no, Your Honor.

THE COURT: Fine. Ladies and gentlemen of the jury, you've now heard all the closing arguments, and I'm about to give you my charge. Do you want to see me?

MS. O'BRIEN: Yes, sir.

THE COURT: Fine. I'll see you in chambers. Just bear with us, please. John.

(The following transpired in chambers out of the hearing of the jury:)

THE COURT: Okay. How we doing?

MR. RICKETTI: We have an agreement in principal [sic], Your Honor. We have not worked the details of the release because—

THE COURT: Then that means after a week of trial, moments away from the jury beginning deliberation-Monday you could come back to me and say, well, it's not settled, we thought it was, but there were loose ends. If it's not settled, then we're going to send it to the jury. You can settle it three minutes after they go out. I don't care.

MR. RICKETTI: Your Honor, we—

THE COURT: But I'm not going to send a jury home that's on the verge of deliberating and with any possibility of having wasted a week of jury trial. If you settle it, God bless you. It means no appeals; the jury, I'm sure, will be happy. But if it's not lock, stock and barrel, the time for ambiguity was a week ago, not now. Okay?

MR. RICKETTI: Yes.

THE COURT: So I'm going to charge the jury. We'll send them out, and you can either tell me it settled or not while they're deliberating.

MR. RICKETTI: That's fine.

MS. O'BRIEN: Your Honor, then I would request if I could have the opportunity to make rebuttal. I mean, I'm

agreeing to the settlement on behalf of my clients. Personal counsel—

THE COURT: Fine. Let's go to rebuttal. Not more than five minutes.

N.T. Jury Trial Volume V, 6/15/07, at 119–125.

¶ 4 Jury deliberations began at approximately 2:20 p.m., and, while deliberating, the jury presented the trial court with questions on three different occasions. Each time, the questions were discussed with counsel and a response formulated and given to the jury. The first question was presented at 2:39 p.m., the second at 2:56 p.m., and the discussion on the last question began at 3:08 p.m. During this time period the parties were also attempting satisfy the trial court's admonition to make the settlement "lock, stock and barrel," *id.* at 125, by defense counsel preparing a written release embodying their agreement to settle. However, shortly after resolving the last jury question and while Ms. O'Brien was in the process of reading through a draft presented to her by Mr. Ricketti, which consisted of two typewritten pages with handwritten interlineations throughout and a third handwritten page [3], the court crier announced that the jury had reached a decision. When the trial judge resumed the bench at approximately 3:30 p.m., the following colloquy took place:

THE COURT: I'm told the jury has reached, a verdict.

MS. O'BRIEN: Your Honor, I would ask that the jury be held until I have the opportunity to finish—

THE COURT: The case is either settled or a verdict will be taken.

MS. O'BRIEN: Your Honor—

THE COURT: As far as I'm concerned, everyone has had since 19—2005 to settle the case.

MS. O'BRIEN: Your Honor, this is the—

THE COURT:—since March of '05 to settle the case. MS. O'BRIEN: Your Honor, I would ask that . . .

(Plaintiffs' counsel speaking to defense counsel off the record.)

THE COURT: Is the case settled, or do we bring in the jury?

MS. O'BRIEN: Yeah, it is, Your Honor. The offer was accepted.

THE COURT: No, no. Is the case settled, or do we bring in the jury?

MS. O'BRIEN: The case was settled, Your Honor.

THE COURT: It was settled?

MS. O'BRIEN: Yes. It is settled, Your Honor. We accepted the offer.

THE COURT: Okay. Fine. State the terms of the settlement, counsel.

MR. RICKETTI: Your Honor, there is no settlement. My clients have withdrawn the offer. When they heard that a verdict was returned, they walked into the courtroom before any offer was accepted. Counsel was still reviewing the release. They walked in the room and immediately said "offer has been withdrawn."

MS. O'BRIEN: Your Honor, they—

THE COURT: Is that accurate or inaccurate?

MS. O'BRIEN: No, Your Honor.

MR. McLAFFERTY: I communicated—

THE COURT: Excuse me. I haven't had to yell at you guys for interrupting, but I will. Yes, counsel.

---

**3.** All parties agree that this third handwritten page existed; however, it could not be located at the time of the hearing on the post-trial motion and has not been included in the certified record on appeal.

MS. O'BRIEN: Your Honor, defense counsel came up to me about 15 minutes ago and said he wanted Donna's agreement on the record. And I said fine, yes, that will be given. And it's been accepted. And now they hear that the jury has returned with a verdict, and now they are denying the—or they're revoking their offer when it was already accepted.

THE COURT: When was it accepted?

MS. O'BRIEN: It was accepted about 45 minutes ago, Your Honor. And defendant said he wanted Donna's assertion on the record, and I said fine, that's absolutely fine. She agrees to the settlement.

THE COURT: I'm a little bit at a loss. If it was accepted 45 minutes ago—

MS. O'BRIEN: Your Honor, they were withholding the release. They were not giving me the release. They kept on scribbling on the piece of paper so that I—what was I going to get [my clients] to sign? The parties agreed to the settlement.

THE COURT: I don't understand. If it was settled—it was settled 45 minutes ago?

MS. O'BRIEN: Yes, Your Honor, absolutely.

THE COURT: Okay. Can you tell me why we just went through ten minutes ago that whole question instead of your telling me it was settled and we don't need to do that?

MS. O'BRIEN: Because they said they had to have the release reviewed by three of their attorneys. They just handed me the release.

THE COURT: Okay.

MS. O'BRIEN: I told you that Your Honor.

THE COURT: Right. If it was settled 45 minutes ago, can you tell me why five minutes ago you asked for ten minutes to review the release to tell me whether it was settled or not?

MS. O'BRIEN: Your Honor, the agreement was the agreement to settle with respect to $60,000 with a general release with the terms that were contained herein. I couldn't read the terms because they were all scribbled, and they weren't given to me till five minutes ago. I explained the terms to my clients, and they didn't revoke their acceptance. The offer was accepted. And they knew that, and now they're reneging and revoking their offer.

THE COURT: Okay. Anything else you'd like to say? Is there anything else you'd like to put on the record?

MS. O'BRIEN: Yes, Your Honor. I would like to have my clients speak into the record as to their agreement to the settlement that had been offered by the defendants.

THE COURT: Okay.

DONNA MASTRONI–MUCKER: They offered us a settlement. We accepted the settlement, and now they're revoking the settlement because they heard that the jury came in so fast. So I don't understand where that leaves us.

THE COURT: Anything else you'd like to put on the record?

MS. O'BRIEN: Mr. Mucker.

CHARLES MUCKER: I also accepted the settlement, Your Honor.

THE COURT: Anything else you'd like to put on the record?

MS. O'BRIEN: No, Your Honor.

THE COURT: Okay. Anything the defense—I cut you off. What would you like to say?

MR. McLAFFERTY: Your Honor, what I was saying is that I told her—

THE COURT: Who's "her"?

MR. McLAFFERTY: I'm sorry, Ms. O'Brien—that the offer was withdrawn. It was an offer. We were in the process of drafting the language. We had presented the language for her to review. She never said "I accept it." She was still reviewing it when I last spoke with her. The next time I came in the room, after I heard there was a verdict, I told her the offer was withdrawn. There was never any acceptance communicated to me. Your Honor indicated that in the absence of specific terms of the general release, there is no settlement. That's why we were hung up earlier. We didn't have language of the release.

THE COURT: Anything further?

MR. McLAFFERTY: No, Your Honor.

THE COURT: Okay. Mr. Ricketti, anything further?

MR. RICKETTI: No, Your Honor. Just join in counsel's recitation of the facts, in that an offer had been made, it had not been accepted, the terms were still being reviewed, and, in fact, we're still negotiating. There's all kinds of terms that weren't discussed before, confidentiality agreements, indemnification, a duty to defend. None of that had been accepted before my clients walked into the courtroom and withdrew their offer.

THE COURT: Okay. Anything else?

MR. RICKETTI: No, Your Honor.

THE COURT: Anything else?

MS. O'BRIEN: I have something else, Your Honor. The representation that was made by defense counsel—the personal defense counsel [Mr. McLafferty] in the courtroom—

THE COURT: Yes. I'm sorry, you've only been tangentially involved. Remind me again who—

MR. McLAFFERTY: My name is Bernard McLafferty.

THE COURT: Okay. McLafferty. Yes. Yes, ma'am, Ms. O'Brien.

MS. O'BRIEN: Your Honor, I specifically told Mr. McLafferty 45 minutes ago in this courtroom that my clients agreed to settle the case for $60,000 and their clients were not to put a new roof on. $60,000 was the monetary consideration for that release. That release— that offer was made and it was accepted. And the defendants delayed in getting any documents. I didn't need the release. They wanted a release. I have no problem with the release that they've proffered. I've reviewed the release with my clients. They have no problem with the release. And the representations by counsel are incorrect. We did accept the offer.

THE COURT: Okay. And did you communicate your acceptance of the terms of that handwritten release that you were reading when I took the bench to defense counsel until just now on the record?

(Time Note: 3:44 p.m.)

MS. O'BRIEN: That's correct, Your Honor, because I had just—

THE COURT: No, it's not correct. The question is: Did you communicate your acceptance of the terms of that handwritten, in part, release, which you were reading when I took the bench, before you did so just moments ago on the record?

MS. O'BRIEN: I—before I did it, yes, I did, Your Honor. I spoke to Mr. Ricketti. Mr. Ricketti was reviewing it. He was reading it to me because his handwriting was illegible; and I agreed with that language before Mr. McLafferty came into the room rushing in, saying "we revoke our offer."

THE COURT: Okay. Great. Pass the document to Charles. We'll mark that Court–1. We will retain the document

that everybody agrees is the handwritten language that was passed in the courtroom from defense to plaintiff.

MR. RICKETTI: Your Honor, before your ruling, may I speak?

THE COURT: Sure.

MR. RICKETTI: I just want—plaintiff[s'] counsel just indicated that she conveyed her acceptance to me. I was still in the process of reading that language, and there was no acceptance ever conveyed to the final terms of that release.

THE COURT: Okay. Well, there's obviously a determination of fact which is needed concerning whether or not the settlement was ever reached before the verdict is about to be taken. We're going to take the verdict, and we will not render a judgment until we take depositions and determine whether or not the verdict is the verdict or a settlement had been reached before. Bring in the jury.

*Id.* at 161–171.

¶ 5 The court crier brought in the jury to receive their decision, which was a defense verdict. Due to the dispute over whether the parties had formed a settlement agreement, the trial court did not record the verdict. Instead, the trial court granted the parties 60 days for discovery and the filing of supplemental memoranda. Appellants filed a post trial motion to enforce the settlement, and the parties took depositions and filed supplemental memoranda, responses, and answers. On October 30, 2007, the trial court issued an order refusing the request to enforce the settlement and entered judgment in favor of the Mastroni Brothers. This timely appeal followed.[4]

¶ 6 The Appellants contend that the trial court's decision to deny enforcement of the settlement is not supported by competent evidence and was erroneous as a matter of law. More specifically, it is Appellants' position that the trial court erred in failing to acknowledge that the parties reached an oral settlement agreement soon after the conclusion of the lunch recess and before deliberations began. While the Mastroni Brothers admit that the parties agreed upon a monetary payment of $60,000.00, they now contend there was no settlement because Appellants' counsel did not agree to all of the terms of the release prior to the withdrawal of the offer. Specifically, they assert that whether the Appellants would indemnify, hold harmless and defend Defendant from any subsequent action by Appellants or others, including their children and subsequent buyers or subsequent owners of the property with regard to mold in the home, whether Appellants would agree to a confidentiality agreement requested by Appellee, or whether Appellants would be releasing not only Mastroni Brothers Roofing, the named Defendant in the case, but also Mastroni Brothers, Inc., Frank Mastroni and William Mastroni, individually were all matters that had yet to be agreed upon. In essence, the Mastroni Brothers now claim that they believed that their agreement to settle was contingent on Appellants signing the release, or at a minimum acknowledging their acceptance to the specific terms proffered in the release, and that they could unilaterally repudiate the settlement at any time prior to the time Appellants did so.

¶ 7 We begin by setting forth our scope and standard of review.

The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's

---

4. The Appellants and the trial court have complied with Pa.R.A.P. 1925.

interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision.

*Ragnar Benson, Inc. v. Hempfield Township Mun. Auth.*, 916 A.2d 1183, 1188 (Pa.Super.2007) (citations and quotation marks omitted). With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. *Skurnowicz v. Lucci*, 798 A.2d 788, 793 (Pa.Super.2002) (citation omitted).

 ¶ 8 The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. *Compu Forms Control Inc. v. Altus Group Inc.*, 393 Pa.Super. 294, 574 A.2d 618, 624 (1990). There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. *Felix v. Giuseppe Kitchens & Baths, Inc.*, 848 A.2d 943, 946 (Pa.Super.2004). If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. *Greentree Cinemas Inc. v. Hakim*, 289 Pa.Super. 39, 432 A.2d 1039, 1041 (1981). Settlement agreements are enforced according to principles of contract law. *Pulcinello v. Consolidated Rail Corp.*, 784 A.2d 122, 124 (Pa.Super.2001), *appeal denied*, 568 Pa. 703, 796 A.2d 984 (2002). "There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 547, 587 A.2d 1346, 1349, *cert.*

*denied*, 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991).

 ¶ 9 Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. *McDonnell v. Ford Motor Co.*, 434 Pa.Super. 439, 643 A.2d 1102, 1105 (1994), *appeal denied*, 539 Pa. 679, 652 A.2d 1324 (1994). This is true even if the terms of the agreement are not yet formalized in writing. *Mazzella v. Koken*, 559 Pa. 216, 221, 739 A.2d 531 536 (1999); *see Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 911 A.2d 133, 147 (Pa.Super.2006) (stating "an agreement is binding if the parties come to a meeting of the minds on all essential terms, even if they expect the agreement to be reduced to writing but that formality does not take place."). Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. *Pulcinello, supra* (citing *Kazanjian v. New England Petroleum Corp.*, 332 Pa.Super. 1, 480 A.2d 1153, 1157 (1984)). An offeree's power to accept is terminated by (1) a counter-offer by the offeree; (2) a lapse of time; (3) a revocation by the offeror; or (4) death or incapacity of either party. *See First Home Savings Bank, FSB v. Nernberg*, 436 Pa.Super. 377, 648 A.2d 9, 15 (1994) (citing Restatement (Second) of Contracts § 36 (1981)), *appeal denied*, 540 Pa. 620, 657 A.2d 491 (1995). However, "[o]nce the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such." Restatement (Second) of Contracts § 42, Comment c. (1981).

¶ 10 In denying Appellants' motion to enforce settlement, the trial judge relied upon the fact that Ms. O'Brien was still at counsel table reviewing the proffered release documents when he took the bench. Therefore, the trial judge found Ms. O'Brien's deposition testimony that she

had "accepted all the terms of the partially handwritten release before the offer was revoked" was not credible. Trial Court Opinion, 8/19/08, at 11. In reaching its conclusion to deny enforcement the trial court found this Court's decision in *Viola v. Bocher*, 740 A.2d 1176 (Pa.Super.1999), *appeal denied*, 563 Pa. 631, 758 A.2d 663 (2000), was instructive because we were "faced with the exact factual situation presented herein." We find the trial court's conclusions are not supported by competent evidence and further find that the record belies the Mastroni Brothers' argument that there was never a meeting of the minds with respect to the scope of the release.

¶ 11 In *Bocher*, the plaintiffs attempted to accept a settlement offer made on behalf of the defendant in a malpractice action while the jury was deliberating. Counsel for the plaintiffs advised the judge of their intent to settle, when a court officer approached and announced that the jury had reached a verdict after deliberating for less than one half hour. Plaintiffs' counsel then went to search for counsel for the defendant in an attempt to communicate the acceptance of the settlement offer. Upon meeting counsel for the defendant, counsel for the defendant informed plaintiffs' counsel that the offer was withdrawn. Counsel for the defendant advised the court that the offer had been withdrawn prior to its acceptance. The jury was brought in and a defense verdict was announced.

¶ 12 The plaintiffs then filed a petition to enforce the settlement, based upon the contention that they had accepted the offer before it was withdrawn. The trial court found that the offer was withdrawn prior to its acceptance. This Court, in rejecting plaintiffs' argument, and accepting the findings of the trial court, noted that the defense counsel's statement of the facts

indicating that he communicated the revocation of the offer before acceptance and the plaintiffs' counsel's statement of the facts that indicated acceptance was communicated before the revocation were "equally credible." Thus, the issue to be decided in *Bocher* turned on the factual dispute over who spoke first. Given this Court's limited review of such matters, we could not overturn the trial judge's factual finding in determining who spoke first since that finding was supported by competent evidence. *See Yaros v. Trustees of the Univ. of Pa.*, 742 A.2d 1118, 1124 (Pa.Super.1999) (noting that "we will not disturb the findings of a trial judge sitting as the finder of fact unless there is a determination that those findings are not based upon competent evidence.").

¶ 13 The circumstances concerning the offer and acceptance in this case are inapposite to those of *Bocher*. In the case at bar, unlike in *Bocher*, there was a settlement agreement that was placed upon the record in open court by all of the parties and their attorneys shortly after the lunch recess. At no time following the lunch recess did the Mastroni Brothers or Donegal indicate that they did not consider the case settled or that settlement was conditioned upon execution of a particular form of release. Moreover, in contrast to *Bocher*, we are not concerned with a factual determination as to whether or not acceptance was revoked prior to Appellants' counsel's communication of acceptance of the offer. Instantly, whether or not Ms. O'Brien communicated her acceptance of the terms presented in the rough draft she was reviewing prior to Mr. McLafferty's announcement that the offer was withdrawn is immaterial to the real issue presented in this case, that is, did the parties make the signing or approval of a particular form of release an express condition precedent to the settlement itself? Our

review of the record finds that they did not so condition the settlement.

¶ 14 During the colloquy following the lunch recess referenced above, counsel for the Mastroni Brothers clearly articulated the scope of the release, indicating to the trial court that the parties reached an agreement for the settlement of any and all claims of any kind or nature that had been raised by Appellants in this case as to Mastroni Brothers Roofing, as well as Mastroni Brothers, Inc. and William and Frank Mastroni, individually for the payment of $60,000.00. *See* N.T. Jury Trial Volume V, 6/15/07, at 120 (stating by Mr. Ricketti: "Your Honor, the defendants have extended an offer of $60,000 in monetary compensation to the plaintiffs in exchange for a full general release of the Mastroni Brothers, Inc., Mastroni Brothers Roofing, William Mastroni and Frank Mastroni, and also an indemnification and defense in the release for any future claims," and by Mr. McLafferty: "General release and indemnification for all fees or claims. We don't want any claims by any future owner coming against Mastroni Brothers. For that payment, they want out of this totally."). At no time during their recitation of the terms of the settlement did either counsel for the Mastroni Brothers ever express that the scope of the release was in dispute or the parties' oral agreement was contingent upon future agreement to ongoing negotiations of release terms.

¶ 15 In *Wolf v. Consolidated Rail Corp.*, 840 A.2d 1004 (Pa.Super.2003), an employee filed suit pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C.S. §§ 51–60, alleging that he was permanently disabled due to bilateral carpal tunnel syndrome. The parties entered into an oral settlement agreement and placed their agreement on the record. After the agreement was placed on the record, CONRAIL sent a release to the employee who refused to sign the release. CONRAIL filed a motion to enforce the settlement agreement. The trial court reviewed the release and directed the employee to sign it, and the employee appealed. This Court held that although the trial court correctly determined that the parties' verbal settlement agreement was proper and enforceable on its own terms, despite the absence of a release, it erred when it directed the employee to sign the release because he had not agreed to terms which the employer included in the release that were not part of the parties' oral in-court settlement agreement. We found the agreement entered into by the parties to be final and binding despite the absence of the written, signed release. We noted that "[t]he signing of the release was not made a condition of the settlement and the tender of a release did not reopen the agreement or make its execution a condition to the settlement itself." *Id* at 1006 (citing *Good v. Pennsylvania RR. Co.*, 384 F.2d 989, 990 (3d Cir.1967)).

¶ 16 Similarly, in *Pulcinello, supra*, an employee filed suit pursuant to FELA and the case was orally settled during conciliation the week before the November trial term. After the conciliation, the case was removed from the trial list as settled. Subsequently, Pulcinello refused to sign the general release prepared and forwarded by CONRAIL regarding the settlement. Pulcinello refused to sign because the nature and extent of his condition worsened after the agreement was made, but before the execution of the settlement documents. CONRAIL moved to enforce the settlement, and the trial court granted the motion. On appeal, this Court affirmed, finding as we did in *Wolf,* that the settlement agreement expressed the intention to settle the case and was valid and binding despite the absence of any writing or formality. The signing of the release

was not made a condition of the settlement, and the tender of the release did not reopen the agreement or make its execution a condition to the settlement itself. *Accord, Woodbridge v. Hall*, 366 Pa. 46, 76 A.2d 205 (1950) (wherein our Supreme Court held there was a binding and enforceable oral settlement agreement because each term in the agreement had been orally agreed upon, although the parties were unable, even after three drafts, to reduce the settlement to writing as had been originally intended).

¶ 17 Additionally, the federal courts applying Pennsylvania law have consistently held that an oral agreement to settle litigation is in itself a binding and enforceable agreement even where performance is postponed to a later date. *Main Line Theatres, Inc. v. Paramount Film Distributing Corp.*, 298 F.2d 801 (3d Cir.1962), *cert. denied*, 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962). In *Main Line*, the Third Circuit Court held that authorized counsel for both sides entered into an agreement and were bound despite the absence of a formal writing laying out as much. *Id.* The tender of a release in this case did not reopen the agreement or make its execution a condition to the settlement itself since the oral agreement had already been made between opposing counsel. *Id.* at 802–803.

¶ 18 Similarly, in *Good, supra*, an employee filed a personal injury action under the FELA. When the action was called for trial, settlement discussions ensued between counsel for the parties in a pre-trial settlement conference before the judge. The railroad's counsel offered to pay the amount that the judge recommended in settlement. After discussion with his client, the employee's counsel telephoned acceptance of the offer. However, when the railroad transmitted the release, the employee disavowed the settlement. The case was then restored to the calendar and a jury trial resulted in a verdict substantially in excess of the amount of the settlement. The district court entered judgment N.O.V. in favor of the railroad on the ground that the settlement barred the recovery. On appeal the Third Circuit Court of Appeals affirmed the judgment finding that the settlement agreement, which was entered into by duly authorized counsel, expressed the intention to settle the case for the agreed amount and was valid and binding despite the absence of any writing or formality. The court noted that the tender of a release did not reopen the agreement or make its execution a condition to the settlement itself. *See also, Gross v. Penn Mutual Life Insurance Company*, 396 F.Supp. 373, 374–375 (E.D.Pa.1975) (holding same).[5] As re-

---

**5.** A multitude of federal courts throughout the country have consistently held that parties are bound by their on-the-record recitations of a settlement agreement, despite subsequent disputes. *See, e.g., United States v. Sforza*, 326 F.3d 107, 115–116 (2d Cir.2003) (affirming the district court's enforcement of the parties' on-the-record settlement agreement despite the defendants' contention that "they never agreed to settle without a full release from all possible civil or criminal liability."); *Wilson v. Wilson*, 46 F.3d 660, 666–667 (7th Cir. 1995) (affirming the district court's enforcement of an on-the-record settlement agreement despite the defendants' contention that "even if there was a meeting of the minds, the fact that the parties never agreed on the legal forms of the releases renders this agreement too indefinite to be enforceable."); *Bridges v. Arch Aluminum & Glass Co.*, Civ. No. 05–2374, 2007 WL 101771, 2007 U.S. Dist. Lexis 1726 (D.Kan. Jan. 9, 2007) (binding the parties to the terms of a settlement recited at a settlement conference and rejecting additional terms the defendants added after that conference); *Trian Group, Ltd. P'ship v. Accident & Cas. Ins. Co.*, Civ. No. 98–1026, 2006 WL 1784310, at *4, 2006 U.S. Dist. Lexis 42931, at *10 (D.N.J. June 26, 2006) (enforcing a settlement agreement where "[t]he record shows that the parties agreed to a release of

flected by the aforementioned cases, a settlement agreement, entered verbally before the trial judge, that expresses the intention of the parties to settle the case for an agreed amount of money, is valid and binding despite the absence of any writing or formality.

¶ 19 Here, as in *Pulcinello* and *Wolf*, we find the oral settlement agreement entered into by the parties expressed the intention to settle the case and was valid and binding despite the absence of any written release or agreement to any specific language included therein. The signing of the release was not made a condition of the settlement and the tender of the release did not reopen the agreement or make its execution a condition to the settlement itself. Despite what the trial court might have thought there is simply no evidence that the parties were engaging in any give and take over the contents of the release's language, beyond that which was orally agreed to during the lunch recess and customarily included in a general release. There was no express reservation of the right not to be bound in the absence of a signed writing; nor is the agreement at issue the type of contract that is usually committed to writing when made during the pendency of a jury trial. While the trial court could have been understandably concerned that one of the parties may have attempted to repudiate the agreement after the jury was discharged, there is a legal remedy for such an action. In any event, a trial court has

no authority to require the parties to formalize the terms of the release before it will acknowledge that a settlement has been reached. *See Johnston v. Johnston*, 346 Pa.Super. 427, 499 A.2d 1074, 1078 (1985) (finding that trial court could not compel parties to sign written contract that contained terms not included in settlement agreement placed on record during trial); *see also Wolf, supra* (holding that trial court committed reversible error in imposing upon the parties a general release not agreed to by parties). Thus, we find the agreement entered into by the parties was final and binding despite the absence of the written, signed release. Furthermore, in *Koken, supra,* our Supreme Court noted that the alleged unsuccessful attempts of counsel to reduce the terms of the parties' settlement agreement to writing does not permit the court to ignore the relevant material facts which are not in dispute. Specifically, the Supreme Court stated that "[e]ven the inability of the parties to an oral agreement to reduce such agreement to writing after several attempts does not necessarily preclude a finding that the oral agreement was enforceable." *Id.* at 225, 739 A.2d at 536. A contract is formed if the parties agree on essential terms and intend them to be binding even though they intend to adopt a formal document with additional terms at a later date. *Johnston, supra*, at 1076.

¶ 20 This case is a prime example of what can happen if the court requires parties to dot every "i" and cross every "t" of

---

known claims against Defendant, not both known and anticipated claims."); *McGinley v. Medina*, Civ. No. 94–2070, 1995 WL 361084, 1995 U.S. Dist. Lexis 8355 (E.D.Pa. June 15, 1995) (finding an enforceable settlement in correspondence exchanged during settlement negotiations), *affirmed*, No. 95–1585, 1996 U.S.App. Lexis 15027 (3d Cir.1996).

Additionally, even where the scope of the release is disputed, courts have held that re-

lease clauses are not necessarily essential terms of settlement agreements. Consequently, courts routinely enforce settlement agreements even where the precise wording of a release has not been finalized. *See Nicholas v. Wyndham Int'l, Inc.*, 2007 WL 4811566 at *4, 2007 U.S. Dist. Lexis 91829 at *10–11 (D.V.I. Nov. 20, 2007) (listing cases).

their oral settlement during the latter stages of a trial before the court will acknowledge the parties' clearly expressed intention to settle. In such a situation counsel is forced to divide their efforts along divergent paths. Counsel must continue to fulfill their litigation responsibilities, *i.e.,* closing arguments, the charging of the jury and responding to jury questions during deliberations, while at the same time trying to draft the written confirmation of the oral agreement required by the court. The folly of such requirement is readily apparent as all would agree that the parties' attitude towards settlement will change once the jury reaches a verdict before the documents can be finalized. Many cases are settled during trial based on an oral agreement reached after offers and counteroffers are made in the hope of ending the litigation, particularly where the principal term of the settlement is the payment of money. Obviously, to require a more formalized presentment of the release would foreclose courts from ever recognizing or enforcing oral agreements to settle especially during the late stages of a trial.

¶ 21 Here, the record warranted a finding that the negotiations reached a point where mutual assent had been expressed orally to settle the litigation for $60,000 with a "full general release of the Mastroni Brothers, Inc., Mastroni Brothers Roofing, William Mastroni and Frank Mastroni, and also an indemnification and defense in the release for any future claims." N.T. Jury Trial Volume V, 6/15/07, at 120. We disagree with the trial court's conclusion that there was some ambiguity in the parties' agreement because Ms. O'Brien indicated a desire to review a release and, thus, there was no settlement. Contrary to the trial court's insistence that no settlement had been reached at that time, the law requires no more formality and no greater particularity than appears here for the for-

mation of a binding contract. *See Taylor v. Stanley Co. of America,* 305 Pa. 546, 553, 158 A. 157, 159 (1932) (stating "An agreement to make and execute a certain written agreement, the terms of which are mutually understood and agreed on, is in all respects as valid and obligatory as the written contract itself would be if executed. If, therefore, it appears that the minds of the parties have met, that a proposition for a contract has been made by one party and accepted by the other, that the terms of this contract are in all respects definitely understood and agreed on, and that a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, this is an obligatory agreement which dates from the making of the oral agreement and not from the date of the subsequent writing.").

¶ 22 This is not a case where the parties themselves contemplated that their agreement cannot be considered complete, and its terms assented to, before it was reduced to writing. Rather, it was the trial court's actions in cutting short counsel's explanation of the settlement terms and insistence that the trial would continue in the absence of specifically outlined release terms that engendered further litigation. *See* (Colloquy referenced *supra*) N.T. Jury Trial Volume V, 6/15/07, at 119–125; *see also, id.* at 167 (wherein Appellee's counsel acknowledged that it was the trial court and not the parties that required a more specific release, stating: "Your Honor indicated that in the absence of specific terms of the general release, there is no settlement. That's why we were hung up earlier. We didn't have language of the release."). If the trial court is going to require such specificity, then at a minimum it must call a recess of the proceedings to allow the parties sufficient time to prepare such documentation before send-

ing the jury out for deliberations. Contrary to the trial court's viewpoint, Ms. O'Brien's expressed desire to review a release did not create any ambiguity as to what was agreed upon. *See id.* at 122 (stating "I would like to see the general release." At which point the trial judge then declared, without allowing further explanation, "then the case isn't settled. Bring in the jury....”). Rather, it was merely the expression of her desire to fulfill her duty as counsel to ascertain whether or not the terms of a proffered release would conform to the parties' oral understanding.

¶ 23 Instantly, the undisputed evidence of record clearly establishes an expression of mutual assent between the parties sufficient to create a binding settlement agreement. Moreover, there is no evidence of record that any controversy arose about the inclusion of a particular provision in the subsequently proffered formal release. Defense counsel does not assert that Appellants' counsel ever rejected the proffered written draft of the release or that Appellants' counsel had made any proposal for a more limited release than was already agreed upon shortly after the lunch recess. The record simply does not support the trial court's conclusion that it was the parties' intention not to be bound until a draft of the release was at least approved if not executed. Accordingly, we find that the trial court's conclusion that there was no orally enforceable contract was clearly erroneous.

¶ 24 Order of October 31, 2007 is reversed and judgment entered on the jury verdict of June 15, 2007, is vacated. Case remanded. Jurisdiction relinquished.