Theodore A. GALL, III a/k/a Ted Gall and Theodore A. Gall IV a/k/a Ted Gall, Jr., Appellees

v.

David A. CRAWFORD and Diane J. Crawford, a/k/a Diane Crawford, His Wife, Appellants

Theodore A. Gall, III a/k/a Ted Gall and Theodore A. Gall IV a/k/a Ted Gall, Jr., Appellants

v.

David A. Crawford and Diane J. Crawford, a/k/a Diane Crawford, His Wife, Appellees.

Superior Court of Pennsylvania.

Submitted April 27, 2009.

Filed Sept. 16, 2009.

Stephen M. Beacon, Saxonburg, for Crawford.

John P. Liekar, Pittsburgh, for Gall.

BEFORE: DONOHUE, CLELAND and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 David A. Crawford and Diane J. Crawford, Appellants, and Theodore A. Gall, III and Theodore A. Gall, IV, Appellees,[1] have filed cross appeals from the order entered in the Court of Common Pleas of Allegheny County granting in part and denying in part each party's respective motions for post-trial relief. The appeals were consolidated by per curiam order on December 2, 2008. We affirm, finding that the prothonotary has the authority under Pa.R.C.P. 1037 to enter a default judgment in an equitable action and to set trial for damages.

¶ 2 On July 1, 2005, Appellees entered into a written agreement in which they agreed to purchase from Appellants a parcel of improved real estate located in Allegheny County for $30,000 and unspecified[2] personalty for another $30,000. Shortly after the agreement, Appellees paid the full purchase price of $60,000. However, on February 17, 2006, Appellants returned $30,000 to Appellees.[3]

¶ 3 After entering into the agreement, Appellees prepared a subdivision plan and submitted it to Appellants, who, after reviewing it, approved, accepted, and signed

---

1. All references to Appellee, in the singular, refer to Theodore A. Gall, IV.

2. On the last page of the parties' "Agreement to Sell Real Estate," a reference is made to Schedule A in which a list of chattels that were to be included in the deal was to appear. The schedule was never prepared. (*See N.T.*, 6/2/08, at 19–20). Prior to trial, counsel for Appellants made reference to certain "[a]ir compressors and tools, desks, and tables, and chairs" which presumably were to be part of the personalty involved in the deal. (*See id.* at 21).

3. From the record, it is unclear whether the returned money was supposed to be allocated to the personalty part of the transaction or the real estate part of the transaction. It is further unclear whether Appellees ever received any of the personalty the parties intended to include in the agreement. However, prior to trial, Appellees' counsel implied that Appellees never received the personalty and informed the court that Appellees did not seek to enforce the personalty part of the agreement. (*See N.T.*, 6/2/08, at 20). In their complaint, Appellees only sought specific performance regarding transfer of the deed to the property, (*see* Complaint), and Appellants never filed a counterclaim seeking enforcement of the personalty part of the agreement.

it, and requested that it be approved by the appropriate governing authorities. The plan was recorded in the Office of the Recorder of Deeds of Allegheny County on August 1, 2006.

¶ 4 On December 14, 2006,[4] Appellees sent Appellants' counsel a letter setting a closing date of January 26, 2007 and requesting that Appellants perform certain duties required of them under the agreement. Neither party attended the closing. Thereafter, on March 13, 2007, Appellees filed a complaint in which it sought, *inter alia,* a decree ordering Appellants to deliver the deed to the property to Appellees, lost profits from rental income, expenses for lost use, and attorney's fees. The complaint also requested the court issue a preliminary injunction prohibiting Appellants from, *inter alia,* selling, leasing, or otherwise encumbering title to the property. On March 30, 2007, the trial court entered an order granting a special injunction and scheduled a hearing on Appellees' request for a preliminary injunction. However, before the date of the hearing, the parties consented to a stipulated preliminary injunction prohibiting Appellants from selling, leasing, or otherwise encumbering title to the property for the duration of the litigation.

¶ 5 On April 3, 2007, in accordance with Pa.R.C.P. 237.1, default notices were sent to Appellants and their attorney for failure to file a responsive pleading to Appellees' complaint. When Appellants failed to respond to the notice, Appellees filed a praecipe for default judgment, which was granted on April 20, 2007. The praecipe requested that the prothonotary "enter judgment by default for liability only, damages to be assessed at trial[.]" (Praecipe for Entry of Default Judgment & Certification of Written Notice, 1). Appellants never filed a petition to open or strike the default judgment.

¶ 6 The case proceeded to bench trial on June 2, 2008. At trial, Appellees sought to establish that they were entitled to $28,500 in lost rent, $16,000 in legal fees, and $3,000 for expenses related to the lost use of the property. Appellants, on the other hand, sought to establish that Appellees failed to perform duties under the contract and thus should not be granted any damages, including the deed to the property; in the event the court did grant Appellees' relief, Appellants sought to prove that the building did not generate the amount of rents claimed by Appellees and that Appellees were never prevented from using the building. After considering the evidence, the court returned a verdict ordering Appellants, *inter alia,* to execute and deliver the deed to the property to Appellees and to pay them $16,000 in attorneys' fees. The court also ordered Appellees to pay Appellants $30,000 as "consideration due for the above described transfer of the real estate[.]" (N.T., 6/2/08, at 102). The court denied Appellees' claim for damages for lost rent and lost use.

¶ 7 On June 12, 2008, Appellants filed a motion for post-trial relief raising mostly "boilerplate" assertions, (*see* Trial Ct. Op., 9/10/08, at 2), as well as a specific claim that the court erred in awarding attorney's fees to Appellees. (*See* Appellants' Post Tr[ial] Motion, ¶ 3). The motion was not

---

4. In November of 2006, Appellants discovered what they believed to be an error in the previously recorded subdivision plan and had Appellee visit them at their home. At trial, the parties disagreed to the purpose of the meeting: Appellee contended it was to complete the closing, (*see N.T.,* 6/2/08, at 65), while Appellants contended it was for amending the subdivision plan. (*See id.* at 83). As we will explain, given the default judgment entered against Appellants, the factual discrepancy is irrelevant because it goes to liability on the breach of contract.

served on Appellees' counsel and did not contain a certificate of service. Three days later, Appellees filed a motion to strike Appellants' post-trial motion for failure to comply with the applicable Pennsylvania Rules of Civil Procedure. Appellees also filed a motion requesting the trial court issue to Appellants a rule to show cause why they should not be held in contempt of court for failing to adhere to the previously issued injunctions. Finally, Appellees filed their own post-trial motion in which they alleged the court erred by ordering them to pay $30,000 and by refusing to award damages for lost rent and lost use of the property.

¶ 8 On July 15, 2008, the trial court denied Appellees' motion to strike Appellants' post-trial motion as well as their motion seeking a rule to show cause, finding that Appellants' "infractions are diminumus [sic]." (Order of Court, 7/15/08). On September 10, 2008, the court granted Appellants' post-trial motion in part, setting aside the award of attorneys' fees but denying all other relief. The court also granted Appellees' post-trial motion in part, striking its order that they pay Appellants $30,000 but denying all other relief. Both parties have timely appealed from this order. Neither party was ordered to file a concise statement of errors complained of on appeal.

¶ 9 On appeal, Appellants argue the prothonotary did not have authority to enter a default judgment. Furthermore, they argue that despite the default judgment against them, Appellees were not entitled to any damages because they failed to plead an essential part of the contract. Appellants do not assign error to the trial court's September 10, 2008 order relieving Appellees of the obligation of paying them $30,000 as consideration for the transfer of the deed. In their cross-appeal, Appellees argue that the trial court erred in denying damages for lost rent and lost use, and by vacating the award of attorneys' fees.

¶ 10 Appellant's first argument is that "the assessment of damages directed by the Prothonotary was not authorized by [Pa.R.Civ.P.] 1037(b) since the complaint did not express a claim for a sum certain or a sum which could be made certain by computation.... It is clear from the plain reading of the Rule, that the Default Judgment in Equity is not authorized." (Appellant's Brief, at 12). Appellants misinterpret Rule 1037.

¶ 11 Preliminarily, we note that Appellant's first claim involves a question of law. As with all questions of law, our standard of review is *de novo* and our scope of review is plenary. *See Mastroni–Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 517–18 (Pa.Super.2009).

¶ 12 Pennsylvania Rule of Civil Procedure 1037 provides in relevant part:

(b) The prothonotary, on praecipe of the plaintiff, shall enter judgment against the defendant for failure to file within the required time a pleading to a complaint which contains a notice to defend or, except as provided by subdivision (d), for any relief admitted to be due by the defendant's pleadings.

(1) The prothonotary shall assess damages for the amount to which the plaintiff is entitled if it is a sum certain or which can be made certain by computation, but if it is not, the damages shall be assessed at a trial at which the issues shall be limited to the amount of the damages.

\* \* \*

(d) In all cases in which equitable relief is sought, the court shall enter an appropriate order upon the judgment of default or admission and may take testi-

mony to assist in its decision and in framing the order.

Pa.R.C.P. 1037(b)(1), (d). The indisputable plain meaning of this rule is that even in cases in which equitable relief is sought, "on praecipe of the plaintiff," the prothonotary shall enter a default judgment against a defendant for failing to file a responsive pleading after which the court "shall enter an appropriate order upon the judgment of default." *Id.* In case of any confusion concerning the plain meaning of the rule, the drafters included a note clarifying that "[w]hile the prothonotary may enter a default judgment in an action legal **or equitable**, only the court may grant equitable relief." *Id., note* (emphasis added). Such is exactly the situation in the instant case. Appellees filed a complaint seeking specific performance, an equitable remedy. After Appellants failed to respond timely to the complaint and after they received notice of Appellees' intent to seek a default judgment but failed to take any action, the prothonotary entered the default judgment and set trial for damages. Such procedure is explicitly permitted by Pa.R.C.P. 1037(b)(1) and (d). Accordingly, Appellant's first claim is frivolous.

¶ 13 Appellants' next argument is that as a matter of law Appellees are not entitled to damages. Specifically, they argue that despite the default judgment, "before the court can enter a judgment it is compelled to examine all of the pleadings and ascertain if, as in the instant case, Appellant has admitted the claim of Appellee in its pleadings either affirmatively or by failure to respond when the rules require a response." (Appellants' Brief, at 12) (quoting *Wallingford Steel Co. v. Wire & Metal Specialties Corp.*, 58 Pa. D. & C.2d 720, 723 (Warren County, 1972)). Appellants insist that Appellees are not entitled to relief because "they failed to plead every element of the contract[,] i.e. the pro-

curement of the subdivision." (Appellant's Brief, at 11). We disagree.

■ ¶ 14 First, we note that because Appellants failed to file a petition seeking to open or strike the default judgment, their argument is essentially a collateral attack on the entry of default judgment. Such attacks are not permitted. *See Meritor Mortg. Corp.-East v. Henderson,* 421 Pa.Super. 339, 617 A.2d 1323, 1326 (1992) ("a default judgment entered on a complaint which was not self-sufficient was voidable only and **could not be made the basis for a collateral attack on the judgment**") (emphasis added).

¶ 15 Moreover, even if we were to examine the pleadings as Appellants urge, they would not be entitled to relief. Appellants argue that Appellees failed to perform an essential duty under the contract, namely, procuring a subdivision of the property. However, Appellees' complaint alleges that "[a]ll conditions precedent to [Appellants'] obligation to perform their duties under the Contract to convey the Property to [Appellees] have been performed and/or have occurred." (Complaint, at ¶ 31). As conceded by Appellants in language quoted from *Wallingford Steel Co., supra,* a defendant admits to factual averments made in a pleading "[b]y fail[ing] to respond when the rules require a response." (*See* Appellants' Brief, at 12) (quoting *Wallingford Steel Co., supra* at 723). Here, because Appellants failed to file a responsive pleading, they have admitted as true that "[a]ll conditions precedent to [their] obligation to perform their duties under the Contract . . . have been performed and/or have occurred." (Complaint, at ¶ 31). Thus, Appellees are entitled to damages as a matter of law.

¶ 16 In support of their argument, Appellants rely heavily on *Williams v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 240 Pa.Super. 578, 362 A.2d 314 (1976), for

their contention that, despite the entry of default judgment, the court should have ruled upon liability. Their reliance is misplaced.

¶ 17 In *Williams,* a default judgment was entered against the defendant and the case proceeded to trial. At trial, "the issues [w]ere not limited to the amount of damages." *Id.* at 315. Rather, both parties introduced evidence concerning liability and damages, and the court found for the defendant on the issue of liability. On appeal, this Court affirmed the trial court's verdict in favor of the defendant. The Court noted that while "there [was] no doubt that appellant [was] correct in asserting that **it was a trial error to consider issues other than the amount of damages at the trial[,]**" *id.* at 315 (emphasis added), it was compelled to affirm the verdict because the appellant failed to object to the introduction of liability evidence at trial. Here, unlike the plaintiff in *Williams,* Appellees made numerous objections to the introduction of liability evidence at trial. (*See N.T.,* 6/2/08, at 64, 84, 90). Accordingly, *Williams* does not persuade us to find in favor of Appellants and, in fact, confirms our conclusion that liability was conclusively resolved by the default judgment.

¶ 18 Finally, we note that at trial, Appellants conceded that the issue of liability was resolved by the entry of default judgment.

The Court: Well, when we say there is a default judgment, the default judgment in what regard? You said liability.

[Appellees' counsel]: Liability. In other words, we have proven there is liability we are entitled to. Specific performance under the contract.

The Court: Do you agree with that?

[Appellants' counsel]: I don't have a choice. The rules are the rules.

(N.T., 6/2/08, at 16). At another point, Appellants' counsel conceded that "[t]he default judgment speaks for itself." (*Id.* at 13). Despite conceding at trial that liability was established by the default judgment, Appellants now argue that they are not liable under the contract because Appellees failed to perform a required duty under the contract. Such argument is obviously meritless.

■ ¶ 19 We now turn to the claims raised by Appellees in their cross appeal. Appellees claim that the trial court committed an error of law and abuse of discretion in refusing to grant them damages for lost rent and lost use. As noted above, with regard to all questions of law our standard of review is *de novo* and our scope of review is plenary. *See Mastroni–Mucker, supra.* With regard to Appellees' claim that the trial court abused its discretion, we note:

An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. An abuse of discretion will not be found where an appellate court simply concludes that it would have reached a different result than the trial court. If the record adequately supports the trial court's reasons and factual basis, an appellate court may not conclude the court abused its discretion.

*Lesoon v. Metropolitan Life Ins. Co.,* 898 A.2d 620, 634 (Pa.Super.2006) (citations omitted), appeal denied, 590 Pa. 678, 912 A.2d 1293 (Pa.2006).

¶ 20 Appellees first contend that Appellants conceded the issue of damages "by virtue of the default judgment which admitted the allegations of damages in [Appellees'] complaint." (*See* Appellee's Brief, at 18). We disagree. Appellees did not include any specific amount of damages in

their complaint. Thus, their contention that Appellants admitted to a certain amount of damages is belied by the record. Furthermore, it was Appellees who requested a trial on the issue of damages. (*See* Praecipe for Entry of Default Judgment and Certification of Written Notice, 1). They cannot now claim it was error for the trial court to hold a trial on the issue of damages simply because they do not agree with the trial court's verdict. Accordingly, Appellees' claim that the court erred as a matter of law in denying damages for lost rent and lost use is without merit.

¶ 21 Appellees' alternative contention is that the trial court abused its discretion, as it "had a clear, undisputed factual basis to award the damages incurred by [them] for loss of use and loss of rental income...." (Appellees' Brief, at 18). In support of their argument, Appellees rely on *Easton Theatres, Inc. v. Wells Fargo Land & Mortg. Co., Inc.*, 265 Pa.Super. 334, 401 A.2d 1333 (1979), *appeal dismissed*, 498 Pa. 557, 449 A.2d 1372 (1982), in which this Court acknowledged that "where specific performance is granted of a contract to sell realty, the general rule is that the vendor must account to the purchaser for any deprivation of the use of the property from the date when possession should have been transferred and for any detriment to the property caused by his failure to preserve it properly." *Id.* at 1342 (citations and internal quotation marks omitted). We agree with Appellees that *Easton's* discussion of equitable principles is an accurate statement of current law. However, we disagree with Appellees' assertion that "[t]he testimony of the parties established that [Appellees'] use of the Property was interfered with, that they did not obtain any rent from other tenants and could not lease out other portions of the building." (Appellees' Brief,

at 18). This summarization of the "parties'" testimony is disingenuous at best, as Appellants clearly offered testimony refuting Appellees' claim for lost rent and use damages.

> [Appellants' Counsel]: So, this building never generated $1,200 a month [in rent]?
>
> [Appellant David Crawford]: No, heavens no. I wish it would have.
>
> \* \* \*
>
> [Appellants' Counsel]: Have you noticed any difference in the use of this property by [Appellee] since November 2006?
>
> [Appellant David Crawford]: No more than he has the building using it as storage for some stuff in there. I don't know what is in there. He locked it from the inside and put a new man door on the other side and I have no keys for it. I can't even get into my own building.

(N.T., 6/2/08, at 82). As trier of fact, it was for the trial court to resolve the conflicting testimony regarding Appellees' alleged lost rent and lost use. It did so, concluding that it "was never convinced by a fair preponderance of the evidence that [Appellees] were entitled to these monies [for lost rent and lost use.]" (Trial Ct. Op., 9/10/08, at 4–5). We are not free to substitute our judgment for the trier of fact. *See Neal v. Bavarian Motors, Inc.*, 882 A.2d 1022, 1029 (Pa.Super.2005) ("if there is evidence in the record to support the award of the trial court, then this Court is not free to substitute its judgment by altering the award."), *appeal denied*, 589 Pa. 722, 907 A.2d 1103 (Pa.2006). Accordingly, while we agree with the legal principles cited by Appellees, we must defer to the trial court's holding that they failed to establish they were entitled to relief.

¶ 22 Appellees' next claim is that the trial court erred as a matter of law and abused its discretion in denying their request for attorney's fees. Specifically, Appellees contend that the trial court erred in finding that "a party may not recover attorney's fees absent the showing of an express statutory or contractual provision allowing such recovery." (Trial Ct. Op., at 6). Appellees argue that, contrary to the trial court's position, "the law of Pennsylvania" is that "[e]quity courts are specifically empowered to make awards of damages which the court believes would fairly and adequately compensate an injured party for the injuries and losses sustained." (Appellees' Brief, at 20).

¶ 23 As recently noted by our Supreme Court, "[u]nder the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus,* — Pa. ——, 976 A.2d 474, 482–83 (2009). "The applicant for counsel fees has the burden of proving his/her entitlement thereto." *Jones v. Muir,* 511 Pa. 535, 515 A.2d 855, 859 (1986).

¶ 24 Here, Appellees rely on *Easton Theatres, supra,* and *Hill v. Nationwide Ins. Co.,* 391 Pa.Super. 184, 570 A.2d 574 (1990), *appeal denied,* 525 Pa. 647, 581 A.2d 573 (Pa.1990), in support of their proposition that "some other established exception" to the American Rule applies. In *Easton Theatres, supra,* this Court asserted that

> [i]n cases where specific performance is granted of a contract to sell realty, the general rule is that the vendor ... must compensate the purchaser for any special or consequential losses resulting from a default on his part to convey the property at the time specified.... There is no basis for distinction between cases where specific performance is awarded of a contract to sell realty and a contract to lease realty. In both situations, the innocent party is entitled to recoup his losses.

*Id.* at 1342. Although the case talked generally about the right of a party in equity to "recoup his losses," the court focused specifically on lost rent and lost use damages. Notably, the Court never mentioned attorney's fees.

¶ 25 In *Hill, supra,* an insured brought an action in equity against his insurer. In reviewing the propriety of the trial court's order that the insurer pay the insured's attorney's fees, the court began its analysis by citing to "Section 1716 of the [Motor Vehicle Financial Responsibility Law (MVFRL)]," which "permits the recovery of attorney fees in an action for first-party benefits by an insured where the insurer has 'acted in an unreasonable manner in refusing to pay the benefits when due.'" *Id.* at 579 (quoting 75 Pa.C.S.A. § 1716). The Court then noted that "[a]lthough the [trial] court did not cite to the MVFRL in support of this conclusion, the court relied upon two cases decided under the now repealed No-fault Act ... We assume the trial court found these cases relevant because the No-fault Act provided for an award of fees where the insurer acted without reasonable foundation in denying benefits, and thus, contained the same language now found in Section 1798(b) of the MVFRL." *Id.* The Court held that because the trial court found that the insurer had "no reasonable foundation," *id.* at 579–80, the award of attorney's fees was authorized by Section 1716 of the MVFRL. Therefore, contrary to Appellees' interpretation of the case, it did not create a general rule that courts sitting in equity can award attorney's fees.

¶ 26 Appellees have not cited, and our independent investigation has not revealed, any Pennsylvania case supporting their specific proposition that courts sitting in equity are permitted to award counsel fees. While we offer no opinion on this ultimate issue, we agree with the trial court that Appellees "have made no case for counsel fees as proper sanctions for [Appellants'] conduct." (Trial Ct. Op., at 7). Accordingly, we decline to grant Appellees relief on the issue.

¶ 27 Appellees' final claim is that the trial court erred and abused its discretion in denying attorney's fees because such fees were authorized by 42 Pa.C.S.A. § 2503 "as a sanction against [Appellants] for [their] dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7). While we agree that a trial court can impose as taxable costs reasonable attorney fees if it finds that an adverse party engaged in "dilatory, obdurate or vexatious conduct during the pendency of a matter," *id.*, we note that the trial court here made no such finding. In the absence of such a finding, we cannot conclude the court abused its discretion in denying counsel fees.

¶ 28 Order affirmed.