## Clifton v. Bruscemi

354

C.P. of Allegheny County, No. GD 12-24293; 76 and 107 WDA 2014

*James Mahood*, for plaintiff.
*Jeffrey A. Hulton*, for defendant.

HERTZBERG, *J.*, Feb. 12, 2014—Defendant Joanne Bruscemi and plaintiff Cynthia Clifton both have appealed to the Superior Court of Pennsylvania from my ruling that Ms. Bruscemi must transfer her joint ownership interest in a dwelling to Ms. Clifton. This opinion provides the reasons for my ruling. *See* Pa. R.A.P. No. 1925(a).

In 1993 Ms. Clifton and Ms. Bruscemi were involved in a relationship and began living together in an apartment. In 1995 Ms. Clifton and Ms. Bruscemi moved to a single family home located at 266 Harrison Road, Turtle Creek, PA 15145. At that time, the title to the home was solely in Ms. Clifton's name, but in 2003 Ms. Clifton signed a deed

transferring ownership to Ms. Bruscemi and Ms. Clifton as joint tenants. The recorded deed contains a clause that makes it subject to an agreement between Ms. Clifton and Ms. Bruscemi. Paragraph 4 of that agreement states:

> If the relationship of CYNTHIA and JOANNE should terminate, then JOANNE agrees to transfer the residence immediately, upon vacating the property, back to CYNTHIA in exchange for payment by CYNTHIA to JOANNE of 50% of the assessed value of the property at the time of termination less $60,000.

In October of 2012, the relationship of Ms. Clifton and Ms. Bruscemi terminated. Ms. Clifton then filed the lawsuit that initiated this litigation. The lawsuit requested that Ms. Bruscemi be compelled to sign a deed transferring her interest in the home to Ms. Clifton.

The dispute was tried before me, and on December 2, 2013 I signed a decree directing Ms. Bruscemi to transfer her interest in the home to Ms. Clifton, with no payment due from Ms. Clifton. The decree also directed Ms. Clifton to satisfy a mortgage both her and Ms. Bruscemi had signed and to pay all expenses of the transfer of Ms. Bruscemi's interest. Both Ms. Clifton and Ms. Bruscemi timely filed motions for post trial relief, which I denied. Both then filed timely appeals to the Superior Court and statements of matters complained of on appeal. Since Ms. Bruscemi was first to appeal, the issues she plans to raise in her appeal will be addressed first.

Ms. Bruscemi argues that I made an error by finding the written agreement is not ambiguous. *See* defendant's concise statement of matters on appeal ("defendant's statement of appeal" hereafter), ¶ no. 1. I acknowledge

struggling during trial with enforcing the written agreement because it omits provisions identifying responsibility for the deed transfer tax and the mortgage, and also because it does not limit Ms. Clifton's ability to unilaterally declare the relationship terminated. As a result, I did say during the trial that the agreement is ambiguous. However, after considering the parties' written closing arguments, I determined that my concerns did not make the agreement "ambiguous" under its Pennsylvania law definition. To be ambiguous, the agreement has to be capable of being understood in more than one sense. *See Hutchison v. Sunbeam Coal Co.*, 513 Pa. 192 at 201, 519 A.2d 385 at 390 (1986). The omitted provisions and the unilateral, unlimited right provided to Ms. Clifton do not have the effect of giving what is set forth in the agreement more than one meaning. Accordingly, I was correct in finding that the agreement is not ambiguous.

Ms. Bruscemi also argues that, because she paid for half of the home's expenses (mortgage, utilities, taxes, etc.), I made an error by ordering her to transfer her ownership interest to Ms. Clifton without requiring Ms. Clifton to pay any compensation. *See* defendant's statement of appeal, ¶ no.2. The testimony established that there were two agreements between the parties. The first of the agreements was oral, made in 1993 when they began living together, and simply was that each of them would pay half of their housing expenses. The second agreement is the 2003 written agreement appended to the deed transferring the home owned by Ms. Clifton to Ms. Clifton and Ms. Bruscemi as joint tenants. No evidence was presented of any provision in either agreement to compensate Ms. Bruscemi based on her payment of half of the housing

expenses. The only applicable provision of either agreement is paragraph 4 of the written agreement. That provision requires Ms. Clifton to pay Ms. Bruscemi "50% of the assessed value of the property...less $60,000." The assessed value is $98,000, hence 50% of that is $49,000, less $60,000 is negative $11,000. Since the applicable provision yields a negative payment amount from Ms. Clifton, I was correct in not requiring any payment from her to Ms. Bruscemi.

Ms. Bruscemi also argues that I should have applied the formula in paragraph 3 of the agreement, which states:

> The consideration for this transfer is that JOANNE agrees to grant to CYNTHIA the first right of first refusal to purchase the residence at any time at the real estate assessed value less $60,000 as indicated in the following sentence. If the residence is sold at any time to any entity, CYNTHIA shall receive the first $60,000 of the gross sale price before expenses with the net remainder split between CYNTHIA and JOANNE as joint owners of the property.

*See* defendant's statement of appeal, ¶ no. 3. While this formula results in a different final amount than the formula in paragraph 4, it applies when the home is sold, which did not occur. Ms. Bruscemi argues paragraph 3 applies because Ms. Clifton testified there is no difference between paragraphs 3 and 4 with respect to distribution of funds between the parties. *See* T., p. 40. Ms. Clifton is wrong and there is a difference, but she gave no testimony on whether she believes that $60,000 should be subtracted first or last. Hence, her testimony that they are the same, when they are not, cannot be equated to an endorsement

of either formula. In other words, she could just as easily have meant that the formula in paragraph 4, rather than paragraph 3, applies. Since Ms. Clifton's trial exhibits verify this was her position (*see* exhibits 4 and 6), there is no merit to the argument that the formula in paragraph 3 applies.

Ms. Bruscemi's final argument is that I made a mistake by finding that Ms. Clifton's use of self-help to evict Ms. Bruscemi is not a breach of the agreement. *See* defendant's statement of appeal, ¶ no. 4. However, since it is implicit in paragraph 4 that Ms. Bruscemi will vacate the home if her relationship with Ms. Clifton terminated, Ms. Bruscemi is the party who breached the agreement by not vacating the home. Ms. Clifton's use of physical force to coerce Ms. Bruscemi to comply with the agreement was improper and could have been the basis for a civil tort claim (Ms. Bruscemi elected not to assert any personal injury claim). But it did not violate any term of the agreement. Therefore, I was correct in determining it was not a breach of the agreement.

Next I will address the issues Ms. Clifton plans to raise in her appeal.

Ms. Clifton argues I erred by ordering her to satisfy the mortgage by refinance or sale of the home. *See* plaintiff's statement of matters complained of on appeal ("plaintiff's statement of appeal" hereafter), ¶ no. 1. However, Ms. Clifton's argument against my order for her to refinance clearly is defeated by her agreement on the record that she would refinance (*see* T., pp. 17 and 210). If Ms. Clifton could not obtain approval for a refinance loan, it would be inequitable for Ms. Bruscemi to be stripped of ownership

while remaining obligated to pay the mortgage. *See* T., p. 129. I therefore ordered Ms. Clifton to satisfy the mortgage by selling the home if she were unable to do so by refinance. Hence, there is no merit to the argument that I erred by ordering the refinance or sale of the home, and in any event, the sale issue is moot because Ms. Clifton was able to refinance. *See* ¶ no. 12 of petition to enforce decree filed 1/24/14 and order dated 1/23/14.

Ms. Clifton also argues I made a mistake by denying her counsel fee claim because allegedly I "agreed at trial to bifurcate those claims to separate proceedings." Plaintiff's statement of appeal, ¶ No. 2. The transcript from the trial plainly demonstrates that Ms. Clifton, rather than the undersigned, is mistaken:

> Mr. Mahood: Your Honor, as to the claim for fees that we have raised, the claim for counsel fees, my thought would be that it would make most sense to sort of bifurcate that from the trial of the rest of the matter and in part because I don't know what the final number is going to be until we have finished this proceeding. My suggestion would be that we present that by petition subsequent to the proceeding before the court.

> The court: Any objection to that?

> Mr. Hulton: I don't see how in any way section 2503 applies, but I have no objection to the court considering that later.

> The court: Well, I think that as to whether it applies or not you're going to have to put any evidence of that in here, but assuming that you meet that burden, you are talking about the amount that would be handled in that

other process; is that correct:

Mr. Mahood: Yes, your honor, and we believe that the evidence is already in the record as far as the entitlement fees.

T., pp. 88-89. Thus, the issue of whether plaintiff was entitled to any award of counsel fees under 42 Pa. C.S. §2503 was not bifurcated to a separate proceeding. Assuming I found Ms. Clifton entitled to an award of counsel fees, then the determination of the amount of the award would be bifurcated to a separate proceeding. Since I did not find from the evidence submitted at trial that Ms. Bruscemi's conduct was "dilatory, obdurate or vexatious during the pendency..." of the litigation (see 42 Pa. C.S. §2503(7)), there could not be any award of counsel fees that would require another proceeding to calculate.[1]

Ms. Clifton also argues I erred by not awarding her money damages. See plaintiff's statement of appeal, ¶ nos. 3 and 7. Ms. Clifton and Ms. Bruscemi had an oral agreement to split their housing expenses such as the mortgage and utilities, and for approximately two months before Ms. Bruscemi vacated the home, she did not pay her share. Ms. Clifton ended up having to pay Ms. Bruscemi's share, which she alleges amounted to $2,613.95. See exhibit 8.[2] I did not award Ms. Clifton any

---

1. While Ms. Clifton argues only that the counsel fee denial was erroneous because the issue was allegedly to be bifurcated, my decision that the evidence submitted at trial did not justify a counsel fee award for dilatory, obdurate or vexatious conduct also was not an abuse of my discretion. See Gall v. Crawford, 2009 PA Super. 187, 982 A.2d 541 at 549-550, appeal denied 12 A.3d 752, 608 Pa. 655.

2. I believe the real amount to be closer to $2,000 since exhibit 8 is premised on expenses for the entire month of January, but the undisputed testimony was that Ms. Bruscemi vacated the home on January 10. T., p. 203.

of these damages because of testimony I found credible that they were offset by housing expense payments Ms. Bruscemi made for Ms. Clifton when she was unemployed and underemployed. T., pp. 102-103. While the testimony at the trial did not establish the precise amount of Ms. Clifton's share of the expenses paid by Ms. Bruscemi, Ms. Clifton admitted she was unemployed a "couple months" and underemployed for an additional period of time. T., p. 70. Since this amount of time was equivalent or greater than the amount of time Ms. Bruscemi had not paid her expenses, I was correct to not award Ms. Clifton money damages.

Ms. Clifton also argues I erred by finding she utilized "self help" and assaults upon Ms. Bruscemi to obtain exclusive possession of the home. *See* plaintiff's statement of appeal, ¶ no. 4. While Ms. Clifton testified this was untrue, I found the testimony of Ms. Bruscemi and John Francis that his had occurred to be more credible. *See* T., pp. 94-97 and 200-203. Since determinations of credibility are left to the judge in a non-jury trial, there can be no error in my determination that Ms. Clifton assaulted Ms. Bruscemi.

Ms. Clifton also argues I made a mistake by determining the home's assessed value is $98,000. *See* plaintiff's statement of appeal, ¶ no. 5. Exhibit 3 is the 2012 Allegheny County Assessment, and it lists a "full market value" of $98,000 and a "County assessed Value" of $83,000. Ms. Clifton argues I should have used the $83,000 "County Assessed Value." The two different values are due to Allegheny County's $15,000 tax exclusion on homesteads.

*See* 53 Pa. C.S. §8581-8586.[3] Since the $15,000 is an amount that Allegheny County decided to "exclude from taxation...of the assessed value" (53 Pa. C.S. §8583(a)), my decision that $98,000 is the assessed value is correct.

Ms. Clifton also argues I erred by finding the parties relationship terminated in October of 2012 because the evidence establishes it was August of 2012. *See* plaintiff's statement of appeal, ¶ no. 6. Ms. Clifton does not explain the significance of this alleged error. In any event, Ms. Clifton testified the relationship terminated in "the fall of 2012" (T., p. 21), "early fall of 2012" (T., p. 26) and "August of 2012" (T., p. 29). Since this inconsistent testimony left me uncertain over when the relationship terminated, I was more comfortable with the earliest date documented by a letter from Ms. Clifton's counsel. *See* exhibit 4, letter dated October 26, 2012. Therefore, I did not make an error by finding the parties' relationship terminated in October of 2012.

Ms. Clifton's final argument is that I erred by not ordering Ms. Bruscemi "to file a complete accounting of her management and use of the parties' joint account." Plaintiff's statement of appeal, ¶ no. 7. Ms. Clifton's requests for an accounting relative to the joint account reference only Ms. Bruscemi's failure to pay bills from the account in November of 2012 and subsequent withdrawal of all funds from it. *See* complaint ¶ nos. 28-38 and plaintiff's pretrial statement. Since Ms. Clifton offered into evidence the bank statements from this joint account from September 26, 2012 until its closure on November

---

3. The township and school district where the home is located may not have had any homestead exclusion or may have excluded an amount greater or less than $15,000.

27, 2012 as well an online bill pay history covering that same time period (*see* exhibits 8-a, 12 and 13), Ms. Clifton received the accounting she requested. Therefore, I was correct in not ordering any accounting.