# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daryl Cook,                                      :
                        Appellant                :
                                                 :
            v.                                   :   No. 2304 C.D. 2015
                                                 :   Submitted: September 2, 2016
City of Philadelphia, City Solicitor,            :
Lieutenant Dean, Officer Fennell,                :
Major May, Detective Gregory Rodden,             :
Jeffrey Minehart, Michael Barry                  :
and Lee Mandell                                  :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                        **FILED: November 28, 2016**


        Daryl Cook (Cook), an inmate in a state correctional institution, appeals from an order of the Court of Common Pleas of Philadelphia County[1] (trial court) denying his motion to strike a settlement agreement and reinstate a default judgment he obtained against two of the appellees (Defendants). Cook, representing himself, contends the trial court erred or abused its discretion in not striking the settlement. Principally, Cook asserts he did not receive certain motions and pleadings, including Defendants' petition to open the default judgment or accompanying rule to show cause. Cook further asserts he only intended to release two Defendants, and the trial court failed to enter a final order as to all parties in the case. For the reasons that follow, we affirm.

---

[1] The Honorable Jacqueline F. Allen presided.

# I. Background

In July 2010, a Philadelphia Common Pleas Court jury convicted Cook of third-degree murder. Ultimately, Cook received a sentence of 20 to 40 years in state prison.

In May 2012, Cook filed a civil complaint against the City of Philadelphia (City) and seven other Defendants allegedly involved in his arrest, interrogation, prosecution and conviction. Cook's complaint set forth a litany of claims against Defendants for intentional torts including assault and battery, false imprisonment, official oppression, malicious prosecution and conspiracy to deny his civil rights, including his right to a fair trial. Cook's claims also included negligence, legal malpractice and conspiracy to violate his constitutional right to a fair trial.

In particular, Cook alleged City police officers arrested him in June 2008 without a warrant or probable cause, and they took him to a station. Two homicide detectives interrogated Cook. One of the detectives, Defendant Rodden, allegedly beat, choked and threatened Cook into making self-incriminating statements. See Supplemental Reproduced Record (S.R.R.) at 65. This resulted in Cook being falsely charged with various crimes including murder, burglary and other offenses. S.R.R. at 66.

After being denied bail, City authorities held Cook at the Curran-Fromhold Correctional Facility. While there, Cook sought access to the prison library. Thereafter, Defendant Fennell allegedly assaulted Cook in retaliation.

2

Defendants Dean and May also allegedly assaulted Cook at the City facility. S.R.R. at 67.

At trial, Defendant Rodden allegedly testified falsely that Cook voluntarily gave his statement. S.R.R. at 68. Rodden also allegedly testified falsely that Cook did not request a lawyer during his interrogation. Id.

Cook also sued his criminal defense attorney, Lee Mandell (Defendant Mandell) for legal malpractice. Cook alleged Defendant Mandell failed to adequately investigate his claim of a coerced confession. In particular, Cook alleged Defendant Mandell made no attempt to obtain videos and recordings of his confession. S.R.R. at 69.

Cook also sued the Honorable Jeffrey P. Minehart (Defendant Minehart), the judge who presided over his criminal trial and sentencing. Cook alleged Defendant Minehart disregarded the jury foreman's announcement declaring Cook not guilty of all charges. S.R.R. at 70. Defendant Minehart then told the jury foreman, "you can't do that," and he sent the jury back to deliberate again. Id. Thereafter, the jury returned a verdict of guilty of third-degree murder. Id. Cook alleged Defendant Minehart's conduct constituted, among other things, official oppression and abuse of authority. S.R.R. at 71.

In addition, Cook sued Assistant District Attorney Michael Barry (Defendant Barry), who prosecuted him. Among other things, Cook alleged

3

Defendant Barry engaged in malicious prosecution and conspiracy to deny Cook a fair trial. S.R.R. at 71.

Ultimately, Cook sought compensatory and punitive damages from Defendants. Cook also sought non-monetary relief including an order releasing him from prison and expunging his murder conviction and sentence.

Relevant here, the trial court dismissed all Defendants except for three City employees: Defendants Rodden, Dean and Fennell.[2]

Also relevant here, the trial court entered a judgment of *non pros* in Cook's legal malpractice claims against Defendant Mandell under Pa. R.C.P. No. 1042.3, based on flaws in Cook's certificate of merit regarding the presentation of expert testimony. S.R.R. at 37. Consequently, the trial court dismissed Cook's malpractice claim against Defendant Mandell with prejudice. Id.

Meanwhile, Cook appealed the trial court's order sustaining the City's demurrer and dismissing Cook's claims against the City. S.R.R. at 40. The

---

[2] The trial court sustained Defendant Minehart's preliminary objections in the nature of a demurrer and dismissed Cook's complaint with prejudice as to Defendant Minehart. S.R.R. at 28.

The City filed preliminary objections asserting governmental immunity under 42 Pa. C.S. §§8541-42 against Cook's intentional tort claims and those based on alleged willful misconduct of City employees. S.R.R. at 75-78. The trial court sustained the City's preliminary objections and dismissed Cook's claims against the City. S.R.R. at 86.

In addition, Cook failed to effect service on either Defendant Barry or Defendant May. The record indicates service failed because neither Defendant Barry nor Defendant May were found. See generally S.R.R. at 34, 22-58 (docket entries do not reflect service on either ADA Barry or Defendant May).

4

Superior Court quashed Cook's City-focused appeal as interlocutory. S.R.R. at 44. However, while the City-focused appeal remained pending, Cook filed a praecipe requesting the entry of a default judgment against remaining Defendants Rodden and Dean. S.R.R. at 87-92. Defendants' attorney, representing only the City during preliminary objections, failed to file a response on behalf of Defendants Rodden and Dean. Absent a response, the trial court's prothonotary entered default judgment against Defendants Rodden and Dean. S.R.R. at 41-42.

At that point, Cook filed a motion to assess damages against Defendants Rodden and Dean. S.R.R. at 96. In response, Defendants' attorney petitioned to open or strike the default judgment against Defendants Rodden and Dean. S.R.R. at 100-117. The trial court granted Defendants' petition, and opened and vacated the default judgment against those defendants. S.R.R. at 118.

In January 2015, the trial court held a status conference with Cook and Defendants' attorney. See S.R.R. at 7-8. Cook, who remained incarcerated, participated by means of video conferencing. Id. During the conference, the parties discussed a previous settlement conference where Cook requested, as a non-monetary part of the settlement, that he be released from prison and that his murder conviction be expunged. S.R.R. at 10. Defendants' attorney explained that the City was unable to provide such relief. Id. To that end, the trial court explained to Cook:

> So that I am as clear as I can be I am saying to you that even if in fact you are an innocent man, wrongly convicted of murder, there is no way to readdress that issue within the context of a civil lawsuit you filed here relating to an assault and battery by [C]ity police officers.

5

S.R.R. at 16.

At that point, Cook stated that he understood the trial court could not release him from prison.  See S.R.R. at 17.  In particular, Cook stated to the court: "However, I'm still going to seek my relief in the criminal process, you know, until so forth so if I was to settle this as to the assault I believe I would simply be entitled to more than $1500.00, could you somehow negotiate a settlement, a significant amount of money?"  S.R.R. at 17-18 (emphasis added).

Cook then stated that at one point he offered to settle for $5,000 and Defendants' attorney agreed.  S.R.R. at 18.  Defendants' attorney disputed that claim, stating the previously discussed amount was $1,500.  Id.  The following discussion then took place:

> [Defendants' Attorney]:  In a sign of good faith, I will offer you $2,000.00 today to settle all claims, but that's the best I can do and that's more than what we previously agreed to.
> [Cook]: Could you then agree on that, Your Honor? Could you propose a settlement?
> [The Court]: I could, but I could tell you I can cut straight to the chase and say that if the City offers you $2,500.00 I think you ought to take it and this case should be marked settled, $2,500.00.
> [Cook]: I want to do that.
> [The Court]: City attorney, do you have that authority?
> [Defendants' Attorney]:  Yes, Your Honor.
> [The Court]: You have the authority today to offer him $2,500.00 to settle this civil lawsuit?
> [Defendants' Attorney]: Yes, Your Honor.
> [The Court]: Mr. Cook, I hear that she has $2,500.00 to offer you a total settlement of this civil lawsuit.  Do you accept it?
> [Cook]: Yes, Your Honor.

6

[The Court]: <u>I will then mark this case settled</u>, just continue to end it. And then you will be hearing thereafter from the City attorney with regard to your check.

[Cook]: Thank you.

[Defendants' Attorney]: And, Mr. Cook, just so you know, I'm going to send a release to you at the prison that you'll need to sign and return and then you'll get your check within forty-five days.

[Cook]: Thank you.

[Defendants' Attorney]: Thank you.

[The Court]: Thank you, Mr. Cook, have a good day.

[Cook]: You're welcome. You too, thank you.

S.R.R. at 18-20 (emphasis added).

Although Defendants forwarded a release to Cook for his signature, Cook refused to sign it. In response, Defendants' attorney filed a motion to enforce the settlement. S.R.R. at 119-27. In May 2015, the trial court granted Defendants' motion. S.R.R. at 128. Thereafter, Cook signed the release.

In August 2015, Cook filed a motion to strike the settlement and reinstate default judgment. S.R.R. at 131-34. In his motion, Cook raised several arguments, most of which pertained to determinations the trial court made prior to Cook's January 2015 agreement to settle the case. For example, Cook asserted the trial court's January 2014 order opening and vacating his default judgment was void. Cook maintained he was not served with a copy of the petition to open the default judgment and that the trial court never issued a rule to show cause why the default judgment should not be opened, a violation of Philadelphia R.C.P. No. 206.4(c). <u>See</u> Pet'r's Br. in Support of Mot. to Strike Settlement, S.R.R. at 135-40.

7

Because this constituted a fatal defect, Cook argued, it rendered all later orders and the settlement void.  Id.

Cook also claimed he did not receive service of Defendants' motion for enforcement of the settlement.  S.R.R. at 137.  Cook further claimed he mailed a motion to enforce the settlement to the trial court, which was never filed.  Id. Cook argued he agreed to settle the assault and battery claims against Defendants Rodden and Dean:

> based on the understanding that said Defendants was [sic] admitting to liability … and therefore (i.e. because of Defendants' admission) [Cook] could use the transcript of the Settlement Conference proceeding to obtain his release from custody by presenting the transcript to the criminal trial court as 'newly discovered evidence' which entitle [sic] him to have his murder conviction and judgment of sentence vacated ….

S.R.R. at 137.  In addition, Cook argued the trial court erred in concluding at the January 2015 status conference/settlement conference that the court did not have the power to order his release and expunge his murder conviction from his record as part of the settlement.  S.R.R. at 138-39.

Finally, Cook argued the trial court failed to enter a final order as to all parties.  This denied Cook his right to appeal from the trial court's order dismissing other Defendants from the case.  S.R.R. at 140.

By order dated October 13, 2015, the trial court denied Cook's motion to strike settlement and reinstate default judgment. Cook appeals.[3]

## II. Issues

Cook presents three primary issues for our review. First, Cook contends the trial court's January 2014 order opening and vacating the default judgment is void because the trial court did not issue a rule to show cause upon the filing of Defendants Rodden and Dean's petition to open judgment. Therefore, Cook continues, all subsequent orders and the January 2015 settlement were rendered void.

Second, Cook contends the trial court's order denying the motion to strike settlement and reinstate default judgment should be vacated and the case remanded to the trial court to fully address the issues he raised in the motion. Cook asserts it was his understanding at settlement that Defendants Rodden and Dean were admitting their liability and that he only settled his claims as to them. Cook also asserts the trial court had the power to grant him the non-monetary relief he requested. Cook further contends Defendants' attorney coerced him into signing a release in order to receive his payment.

---

[3] The enforceability of settlement agreements is determined according to principles of contract law. Mastroni-Mucker v. Allstate Ins. Co., 976 A.2d 510 (Pa. 2009). Because contract interpretation is a question of law, our standard of review is de novo and our scope of review is plenary. Id. With respect to factual conclusions, we may reverse the trial court only if its findings are predicated on an error of law or are unsupported by competent evidence. Id.

Third, Cook asserts the trial court did not enter a final order as to all parties, thereby denying Cook his right to file an appeal against previously dismissed Defendants.

In addition, Defendant Mandell, Cook's criminal defense attorney, requests that this Court affirm the October 16, 2012, order of the trial court entering a judgment of *non pros* in Cook's legal malpractice claim and dismissing Cook's legal malpractice claims against him with prejudice.[4]

### III. Discussion
### A. Petition to Open Default Judgment; Rule to Show Cause
### 1. Argument

As noted above, Cook first contends the trial court's January 2014 order opening and vacating the default judgment is void because the trial court did not issue a rule to show cause upon the filing of Defendants Rodden and Dean's petition to open judgment. More specifically, Cook maintains his due process rights were violated because: (1) Defendants Rodden and Dean did not serve him with a copy of the petition to open the default judgment and, (2) the trial court

---

[4] Although Cook identifies the trial court's October 13, 2015, order denying his motion to strike settlement as the only order he is appealing, it is unclear from Cook's brief and reply brief whether he also intended to appeal the trial court's October 16, 2012, order dismissing his legal malpractice claims against Defendant Mandell. Previously, Cook filed an appeal challenging, among other orders, the trial court's order dismissing his malpractice claims against Mandell. See Cook v. City of Phila., (Pa. Cmwlth., No. 1004 C.D. 2013). By order dated August 1, 2013, this Court quashed that appeal as untimely. However, in his reply brief in the present appeal, Cook indicates he did intend to appeal the trial court's dismissal of his malpractice claims against Mandell. Given the complex circumstances in this case, and in the interests of judicial economy, we will address Defendant Mandell's request to review the trial court's October 16, 2012 order, entering a judgment of *non pros* as to Cook's legal malpractice claims against him.

10

never issued a rule to show cause why the default judgment should not be opened, a violation of Philadelphia R.C.P. No. 206.4(c). See Appellant's Br. at 22-29. Cook asserts these are fatal defects which render all later orders and the settlement void. Id.

In response, Defendants assert Cook agreed in open court to a complete settlement with counsel for all remaining parties in the case. More particularly, Defendants argue Cook's oral agreement to settle compromised the procedural issues he raised concerning the trial court's prior order opening and vacating the default judgment.

Further, if Cook believed he was entitled to relief on any substantive claims, Defendants maintain Cook could have continued the case on the merits and preserved his appellate rights. However, Cook accepted Defendants' counsel's offer of $2,500 in exchange for a "total settlement of this civil lawsuit." S.R.R. at 19. Thus, Defendants assert Cook remains bound by his oral agreement in court regardless of whether he later changed his mind. Kazanjian v. New England Petroleum Corp., 480 A.2d 1153 (Pa. 1984).

## 2. Analysis

"The enforceability of settlement agreements is governed by principles of contract law." Mazalla v. Koken, 739 A.2d 531, 536 (Pa. 1999). To be enforceable, a settlement agreement must possess all of the elements of a valid contract." Id. "There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant

11

will pay the plaintiff the agreed upon sum)." Muhammad v. Strassburger, McKenna, Messer, Shilobod & Gutnick, 587 A.2d 1346, 1349 (Pa. 1991). "As with any contract, it is essential to the enforceability of a settlement agreement that 'the minds of the parties should meet upon all the terms, as well as the subject matter, of the [agreement].'" Mazella, 739 A.2d at 536 (citation omitted).

Also, where the parties orally agreed on the essential terms of a settlement, the fact that they have not yet memorialized their agreement in writing does not prevent enforcement of the agreement. Mazella. To that end, the inability of the parties to reduce their oral agreement to writing does not necessarily preclude the enforceability of the oral agreement. Id. If there is an agreement as to all material terms of the settlement, it may be enforced. Id.

Here, Defendants' attorney offered Cook $2,000 to "settle all claims." S.R.R. at 18. The trial court then asked Defendants' attorney if she had the authority to offer Cook $2,500 "to settle this civil lawsuit." S.R.R. at 19. After she replied yes, the trial court asked Cook if he would accept the $2,500 as a "total settlement of the civil law suit." Id. (emphasis added). He replied, "Yes Your Honor." Id. The trial court then stated, "I will mark this case settled …." Id.

As the trial court correctly noted in its opinion in support of its order, the record plainly indicates the parties reached a settlement agreement for the entire lawsuit. Defendants offered Cook $2,500 as consideration for a *total* settlement of the civil lawsuit. S.R.R. at 19. Cook accepted the offer. Id. This settlement is legally enforceable against Cook. Mazella; Muhammad.

12

Consequently, Cook's issues regarding procedures occurring prior to settlement, including the alleged lack of service of Defendants' petition to open judgment and the trial court's failure to issue corresponding rule to show cause, must be considered withdrawn and terminated by Cook's agreement to settle the total lawsuit. In short, by settling the case, Cook agreed to discontinue those claims. Mazella; Muhammad.

## B. Motion to Strike Settlement; Final Order

### 1. Argument

Cook also advances several reasons why the trial court erred in failing to grant his motion to strike settlement and reinstate the default judgment against Defendants Rodden and Dean. Cook contends it was his understanding that Defendants Rodden and Dean were admitting liability at the time he agreed to settle his claims against them. See Appellant's Br. at 36. Cooks also maintains he only agreed to settle the case as to Defendants Rodden and Dean. Id.

In addition, Cook contends the trial court lacked jurisdiction to grant Defendant Fennell's motion for enforcement of settlement because Fennell never entered an appearance and was not served with Cook's complaint. See Appellant's Br. at 34, 36. Cook further contends Defendant Dean did not file a motion for enforcement of settlement. Id.

Cook also asserts he was threatened and under duress at the time he entered into the settlement. To that end, Cook claims he was coerced into signing

13

a general release by Defendants after the trial court granted their motion to enforce settlement. Specifically, Cook claims they threatened him with nonpayment if he did not sign the release. See Appellant's Br. at 35.

Cook also contends the trial court erred in determining it could not provide the non-monetary relief Cook requested. This included the issuance of a writ of habeas corpus, a release from custody, an injunction prohibiting the enforcement of Cook's murder conviction and sentence, and expungement of the same. See Appellant's Br. at 32-33.

As a final point, Cook argued in his motion to strike the settlement that the trial court failed to enter a final order, which precluded him from appealing the orders dismissing several Defendants in this case. Cook claimed this denied him his right to appeal. Although Cook raises this argument in his Summary of Argument (Appellant's Br. at 21), he does not further address this issue in the Argument.

Cook asserts the trial court failed to adequately address the above issues, which were raised in his motion to strike the settlement and reinstate the default judgment. Therefore, Cook requests we reverse the trial court's order denying his motion to strike the settlement or, in the alternative, vacate the order and remand for a hearing on the motion and disposition of the issues raised. See Appellant's Br. at 37.

## 2. Analysis

In its opinion, the trial court relied on the record, which clearly indicates the parties reached an agreement. Tr. Ct., Slip Op., 2/22/16, at 4. Defendants offered Cook $2,500 as consideration for a *total* settlement of the civil lawsuit. Cook accepted the offer. Id. at 3-4. Thereafter, the trial court marked the case settled, discontinued and ended. Id. at 5.

We disagree with Cook's positions for several reasons. First, Cook was told that the civil lawsuit would not impact his criminal conviction. More particularly, during the settlement discussion, the trial court explained to Cook that even if he could prove in the civil suit that Defendants Rodden and Dean assaulted and battered him, it would have nothing to do with him being released from his criminal conviction. See S.R.R. at 17. Cook stated he understood that "very clearly." Id. In addition, Cook never indicated that he intended to use the settlement agreement as evidence that Defendants Rodden and Dean admitted to assaulting him in a proceeding to overturn his criminal conviction.

Second, the trial court gave Cook accurate information regarding the impact of the civil lawsuit on his criminal convictions. Under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S. §9542, the statutory remedy "shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this [statute] takes effect …." Thus, after a direct criminal appeal, the PCRA is the sole remedy available to obtain the non-monetary relief Cook sought. Cook's civil lawsuit could not be used to obtain such relief as a matter of law.

Third, Cook was told that as part of the settlement he would need to sign a release. Thus, after agreeing to the settlement, Defendants' attorney informed Cook that she would send him a release that he would have to sign and return before he would receive his money. S.R.R. at 19. Cook replied, "Thank you." Id. At no point during the settlement discussion did Cook inform the trial court or Defendants' attorney that he would not release any Defendant from liability.

Generally, a unilateral mistake by one party that is not caused by the fault of the opposing party will not provide a basis for relief from a valid compromise and release. Farner v. Workers' Comp. Appeal Bd. (Rockwell Int'l), 869 A.2d 1075 (Pa. Cmwlth. 2005). However, if the opposing party is aware or has reason to know of the unilateral mistake by the other party, it may be treated as a mutual mistake warranting relief. Id.; see also Regscan, Inc. v. Con-Way Transp. Servs., 875 A.2d 332 (Pa. Super. 2005) (if non-mistaken party to a contract knows or has reason to know of the unilateral mistake, and the actual intent of the parties is clearly shown, relief will be granted).

If there was any genuine mistake here, which is hard to imagine in the face of the very clear record to the contrary, it was of the unilateral kind. Cook did not tell the trial court or Defendants' attorney that he wanted to use the settlement as an admission against several Defendants. Also, Cook did not indicate that he would not sign a release. Because any mistake was unilateral, it was not of the

16

kind to vitiate Cook's agreement on the record to settle the total civil lawsuit. Farner.

Fourth, for the same reasons, the settlement agreement is dispositive of Cook's arguments that the trial court erred in determining the settlement applied to all Defendants. To that end, Cook did not advise the trial court or Defendants' attorney that he intended that the settlement only applied to Defendants Rodden and Dean or that he intended to reserve any appellate rights. To the contrary, Cook agreed to a *total settlement* of the civil lawsuit. S.R.R. at 19. Accordingly, Cook preserved no right of appeal against any of the Defendants. As such, the trial court did not err or abuse its discretion by not issuing a final appealable order.

Fifth, we also reject Cook's contention that the trial court erred in failing to find Defendants' attorney coerced him into signing a release by threatening him in a May 2015 letter advising him that if he did not sign and return the enclosed release, he would not receive payment. See Appellant's Br. at 35. The letter informed Cook that the trial court granted Defendants' motion to enforce settlement and that if he did not execute the release, "this file will be terminated without payment." Id. (allegedly quoting May 18, 2015 letter).

Where the duress of the first party induces a second party to enter into a transaction that he has reason to know he was under no obligation to enter into, that transaction is voidable against the first party. Loizos v. Mutual of Omaha Ins. Co., 326 A.2d 515 (Pa. Super. 1974). Duress is that degree of danger or restraint, either actually inflicted, or threatened and impending, which is sufficient in

17

severity to overcome the mind of a person of ordinary firmness. <u>Carrier v. William Penn Broadcasting Co.</u>, 233 A.2d 519 (Pa. 1967).

Here, Defendants' attorney's letter (informing Cook that he must sign and return the release in order to receive his money) did not threaten or coerce him to do anything he had not already agreed to do. Cook agreed in open court to settle the case, and he agreed to sign and return a release in order to receive his check. S.R.R. at 19. Moreover, Cook did not object when the trial court informed him it would mark the case settled and discontinued based on his oral agreement to settle. <u>See</u> S.R.R. at 19-20.

Sixth, although Cook obviously changed his mind at a later date about settling the case and releasing Defendants Rodden and Dean from liability, an oral agreement to settle a lawsuit is binding even though the plaintiff changes his mind after the parties reached an oral agreement but before they reduced the agreement to writing or before he signed a release. <u>Pulcinello v. Consol. Rail Corp.</u>, 784 A.2d 122 (Pa. Super. 2001); <u>see</u> <u>also</u> <u>Gross v. Penn Mutual Life Ins. Co.</u>, 396 F. Supp. 373 (E.D. Pa. 1975) (once oral settlement agreement is struck, it is enforceable). Consequently, we discern no error or abuse of discretion in the trial court's order denying Cook's motion to strike the settlement.

## C. Judgment of *Non Pros* in Legal Malpractice Claim

### 1. Argument

Defendant Mandell, Cook's criminal defense attorney, asserts the trial court properly dismissed Cook's legal malpractice claims against him. Here, the

18

trial court determined Cook failed to comply with Pennsylvania Rule of Civil Procedure No. 1042.3, which requires that an unrepresented plaintiff in a professional malpractice case file a certificate of merit, supported by a written statement from an appropriate licensed professional, stating the professional defendant's conduct fell outside acceptable professional standards and contributed to the plaintiff's harm. In its order, the trial court determined Cook failed "to satisfy both the letter and the spirit of the Rule." Tr. Ct. Order, 10/16/12; S.R.R. at 37.

Here, Defendant Mandell asserts, Cook failed to file a certificate of merit with his complaint. In June 2012, pursuant to Pa. R.C.P. No. 1042.6(a), Mandell filed and served upon Cook a notice of intent to enter judgment of *non pros* on the professional liability claim for failure to file a certificate of merit. In response, Cook filed a certificate of merit stating that the expert testimony of a licensed professional was unnecessary to the prosecution of the claim. See Cook's Certificate of Merit, Appellee Mandell's Br., Ex. A.

Mandell then filed a motion for summary judgment asserting Cook is precluded from calling an expert at trial under Pa. R.C.P. No. 1042.3(a)(3), on the basis that Cook certified no expert was needed. McCool v. Dep't of Corr., 984 A.2d 565 (Pa. Cmwlth. 2009). Thereafter, Cook filed a second certificate of merit stating he intended to present expert testimony from Defendant Mandell for the prosecution of the claims against him "because he is himself an expert (*i.e.* an attorney at law) or I intend to have an expert appointed due to me being a pauper." Cook's Second Certificate of Merit, Appellee Mandell's Br., Ex. B.

19

In short, Mandell argues that expert testimony is required in legal malpractice claims to establish the appropriate standard of care and a breach of that standard. See Rizzo v. Haines, 555 A.2d 58, 67, n.10 (Pa. 1989). Therefore, Mandell asserts the trial court properly entered a judgment of *non pros* against Cook and dismissed his legal malpractice claims against Mandell with prejudice.

## 2. Analysis

Failure to comply with Rule 1042.3 is fatal to a plaintiff's claim in a professional liability action. Womer v. Hilliker, 908 A.2d 269 (Pa. 2006). In addition, a *pro se* litigant is not absolved from complying with our procedural rules. Hoover v. Davila, 862 A.2d 591 (Pa. Super. 2004). Rule 1042.3(a), which requires that an unrepresented plaintiff file a certificate of merit and supporting written statement, specifically envisions *pro se* plaintiffs. Thus, a lack of understanding of Rule 1042.3 will not justify Cook's noncompliance with it. Hoover. Further, although Pa. R.C.P. No 126[5] provides some flexibility in the application of the procedural rules, it does not excuse noncompliance. Womer. In short, a party's "wholesale failure" to comply with the requirements of Rule 1042.3 cannot be overlooked. Womer, 908 A.2d at 271.

In the present case, the trial court determined that Cook's second certificate of merit, which states that he intends to present expert testimony from

---

[5] Rule 126 provides: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa. R.C.P. No. 126.

Mandell against himself, failed to satisfy either the letter or spirit of Pa. R.C.P. No. 1042.3. We agree. Cook does not attach a written statement signed by Mandell, or anyone else, that states there exists a reasonable probability that the care, skill or knowledge exercised by Defendant Mandell fell outside acceptable professional standards. Pa. R.C.P. No. 1042.3(a)(1). Nor is there a written statement signed by Mandell, or anyone else, that Defendant Mandell's conduct was a cause in bringing about harm to Cook. Id. Without such a written, signed statement, Cook's legal malpractice claims could not go forward.

Cook's alternative strategy, to have the trial court appoint an expert witness for him because of his *in forma pauperis* status, is equally untenable. As noted above, a party's *pro se* status does not relieve him of the burden of obtaining a certificate of merit accompanied by a written statement from a licensed professional. Pa. R.C.P. No. 1042.3(a)(1),(2),(3); Hoover. Moreover, Cook cites no authority for the trial court to appoint an expert to assist him in his civil lawsuit for money damages.

In sum, it is evident from Cook's certificate of merit that he had no written statement from any licensed attorney that Defendant Mandell's representation of Cook during the criminal proceedings fell below the accepted professional standards for a criminal defense attorney. Consequently, the trial court did not err in entering judgment of *non pros* against him under Pa. R.C.P. No. 1042.3 and dismissing his malpractice claims against that Defendant. Womer; Hoover.

21

Nonetheless, Cook argues in his reply brief that he did not need a certificate of merit to support his claims of negligence, bad faith, misrepresentation, fraud and conspiracy to violate civil rights against Defendant Mandell. We disagree.

In discovery, Cook admitted his claims against Defendant Mandell were based on allegations that Mandell "willfully and/or negligently deviated from an acceptable professional standard and committed conspiracy, fraud, bad faith, malfeasance, misrepresentation, legal malpractice, negligence, and thus caused [Cook] to suffer damages." See Defendant Mandell's Request for Admissions No. 12, Appellee Mandell's Br., Ex. H (p. 74) (emphasis added). Because Cook's allegations sound in a deviation from an acceptable professional standard, he is not excused from compliance with Pa. R.C.P. No. 1042.3; Womer; Hoover.

### III. Conclusion

For the above reasons, we discern no error or abuse of discretion by the trial court in denying Cook's motion to strike the settlement agreement and reinstate default judgment. We also detect no error or abuse of discretion in the trial court's October 16, 2012, order entering judgment of *non pros* against Cook and dismissing with prejudice his professional liability claims against Defendant Mandell. Accordingly, we affirm the trial court's order denying Cook's motion to strike the settlement agreement and reinstate default judgment.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Daryl Cook, : 
               Appellant : 
         : 
       v. :   No. 2304 C.D. 2015
         : 
City of Philadelphia, City Solicitor, : 
Lieutenant Dean, Officer Fennell, : 
Major May, Detective Gregory Rodden, : 
Jeffrey Minehart, Michael Barry : 
and Lee Mandell : 

## **O R D E R**

**AND NOW**, this 28th day of November, 2016, for the reasons stated in the foregoing opinion, the October 13, 2015 order of the Court of Common Pleas of Philadelphia County denying Appellant Daryl Cook's motion to strike the settlement agreement and reinstate default judgment is **AFFIRMED**.

 

 

_____

ROBERT SIMPSON, Judge