**Food Line Management t/a Port Richmond Thriftway v. Dollar Tree Stores, Inc.**

C.P. of Philadelphia County, March Term, 2013 No. 01629

*Bruce E. Rodger, Samuel Shaffer Dalke* and *Justin Proper*, for plaintiff.

*Eric E. Reed*, for defendant Dollar Tree Stores, Inc.

*Jonathan W. Hugg* and *Nolan Ganguli Shenai*, for defendants Cedar Realty Trust and Port Richmond LLC 1.

GLAZER, *J.*, July 11, 2013—The petition of defendant Dollar Tree Stores, Inc. ("Dollar Tree") requires this court to determine whether communications exchanged by

counsel on behalf of their clients constituted a settlement agreement, where Dollar Tree's reply to the offer of plaintiff Food Line Management, Inc. ("Thriftway,") contained conditions and terms not found in the original offer. For the reason below, the court finds that the new conditions and terms in Dollar Tree's reply amounted to a counteroffer and a rejection of Thriftway's offer. As a result, the petition of Dollar Tree to enforce the purported settlement agreement is denied.

## Background

On April 30, 2013, Bruce Rodger, Esquire, counsel for Thriftway, sent an e-mail containing and offer to settle to Marilyn G. Kohn, Esquire, counsel for defendant Dollar Tree. The e-mail stated in pertinent part:

I have been instructed ... to pursue ... discussions leading to a global settlement of all claims, counterclaims, etc. asserted by ... all parties in the ... litigation....

[Thriftway] would be willing to forego further pursuit of the claims asserted in the Thriftway complaint ... if Dollar Tree will agree to certain reasonable limitations upon its future business operations.... Those limitations include:

a) Dollar Tree's agreement, for the duration of its tenancy ... (the "Relevant Time Period,") to limit food product displays, (including but not limited to refrigerated and frozen) to the sale floor square footage described in the April 19, 2012 Declaration of Larry Mitchell...."[1]

---

1. *See* Declaration of Larry Mitchell, Director of Visual Merchandising of Dollar Tree, Inc., dated April 19, 2012, ¶¶ 6-7, ,attached to

b) Dollar Tree's agreement for the relevant time period not to offer for sale ... fresh produce, meats or deli products and to restrict dairy product offerings to items selling for one dollar or less.

c) Dollar Tree's agreement for the relevant time period not to offer for sale ... any food product items (defined as edible, regardless of nutritional content) selling for more than one dollar.

d) Dollar Tree's agreement for the relevant time period not to accept SNAP food stamps and related benefits (not including SNAP cash benefits), or WIC benefits, as payments from customers.[2]

Defendant Dollar Tree, in its petition to enforce the settlement agreement, made the following averments:

Dollar Tree responded to Thriftway by email dated May 8, 2013 .... *Dollar Tree agreed to the essence of the first three terms (although suggesting certain refinements to the proposed language). Thus, as of May 8, 2013, there remained only one essential term of the Thriftway Settlement Proposal not agreed to: whether Dollar Tree would agree to limit its acceptance of*

the Declaration of Attorney Nancy C. DeMis in opposition to Dollar Tree's petition to enforce settlement agreement. In his Declaration, Larry Mitchell stated that the total area of the Dollar Tree store was approximately 9,464 square feet, and the total selling floor was 7,614 square feet. Larry Mitchell also stated in his declaration that "[a]proximately 12.42% of the total selling floor ... is dedicated to the sale of food products." Since 12.42% of 7,614 square feet equals approximately 946 square feet, this figure represents approximately the essential term contained in Thriftway's e-mail offer, item a), dated April 30, 2012.

2. E-mail dated April 30, 2013, from Bruce Rodger, Esquire, to Marilyn G. Kohn, Esquire, exhibit C to Dollar Tree's petition to enforce settlement agreement.

*SNAP payments....*[3]

To determine whether Dollar Tree's reply e-mail dated May 8, 2013 constituted an acceptance of the first three essential terms of Thriftway's offer, the court shall examine the language in the reply from Dollar tree to Thriftway. Dollar Tree's reply stated as follows:

a) Larry Mitchell's declaration is somewhat ambiguous.... Therefore, to maintain the current average amount of sales devoted to food we have to add an allowance for seasonal displays.... Dollar tree will agree to limit it's [*sic*] display of food products to an area no more than 1,400 square feet ... plus 2.5 feet of aisle space in front of the display unit.

b) I believe we are in agreement as to item (b), but we would need to define certain terms carefully. For example, fresh meat" means uncooked, unprocessed and unfrozen meat. "Fresh deli products" means, for example, sliced-to-order or packaged-to-order products of the kind sold at staffed deli counters. We can work on the exact language....

c) Dollar tree will agree to remain a single-price store, with the price set at $1.00 or less for the *near future*. However, we need an allowance so that, in the event the company elects to raise the price point to allow for inflation or costs increases, it would be allowed to do so. In other words, the store will remain a single economy price point concept, but might raise that price to $1.25 (or some other amount)... We can agree if ... the price point remains within 10% of equivalent of

---

3. Dollar Tree's petition to enforce settlement agreement, ¶ 10 (emphasis supplied).

today's $1.00....

d) Dollar tree is not inclined to cease participation in the SNAP or WIC programs.

## Discussion

In Pennsylvania,

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement."[4]

[A]n agreement is binding if the parties come to a meeting of the minds on all essential terms...."[5]

[A conditional acceptance] ... without the parties' mutual agreement to the condition, cannot be the basis of a meeting of the minds or an intent to be mutually bound.[6]

A reply to an offer which purports to accept an offer, but instead changes the terms of the offer, is not an acceptance, but, rather, is a counter-offer, which has the effect of terminating the offer.[7]

Examination of the reply e-mail of Dollar Tree, dated May 8, 2013, shows that Dollar Tree did not agree to the essence of any of the terms contained in Thriftway's offer dated April 30, 2013. Indeed Dollar Tree, rather than merely suggesting certain "refinements" to the proposed language from Thriftway, proposed altogether new terms

---

4. 101; 976 A.2d 510, 518 (Pa. Super. 2009).

5. *Commerce Bank/Pennsylvania v. First Union Nat. Bank*, 2006 Pa. Super. 305; 911 A.2d 133, 147 (Pa. Super. 2006).

6. *Espenshade v. Espenshade*, 729 A.2d 1239, 1247 (Pa. Super. 1999).

7. *Id.*

and conditions found in the original offer from Thriftway.

As to item a) in Thriftway's offer, Dollar Tree counter-offered by suggesting that it be allowed to dedicate to the sale of food products no less than 1,400 square feet of floor space, plus 2.5 feet of aisle space, even though Thriftway's proposal, which referenced the Declaration of Larry Mitchell, offered a maximum floor space dedicated to the sale of food products to no more than 12.42% (approximately 946 square feet) of Dollar Tree's selling floor space.

As to item b), Dollar Tree's counsel stated the following in its reply: "I believe we are in agreement as to item (b) but we would need to define certain terms carefully." This language clearly and unequivocally shows that there was no meeting of the minds as to the essential terms contained in Thriftway's offer at item b).

As to item c), Dollar Tree replied that it agreed to sell food items in its store for no more than $1.00, yet it quickly requested an "allowance" that would enable Dollar Tree to sell food items for up to $1.25 per item as an adjustment for inflation and cost increases. The discrepancy between Thriftway's offer and Dollar Tree's reply shows that there was no meeting of the minds as to an essential term contained in item c).

As to item d), Dollar Tree clearly and unequivocally rejected Thriftway's proposal by refusing unconditionally to cease participation in the SNAP or WIC programs.

The reply of Dollar Tree did not accept Thriftway's offer in any way whatsoever; rather, it provided a counteroffer which rejected and terminated Thriftway's offer. Since there was no meeting of the minds and no settlement

agreement, the petition of Dollar Tree is denied.[8]

## ORDER

And now, this 10th day of July, 2013, upon consideration of the petition of defendant Dollar Tree Stores, Inc. to enforce settlement, the responses in opposition of plaintiff Food Line Management, Inc. and defendant Port Richmond LLC1. and the respective memoranda of law, it is ordered that the petition is denied.

---

8. In the response in opposition to Dollar Tree's petition, defendant ("Port Richmond",) asserts in its new matter that "Dollar Tree and Thriftway have impermissibly included in and attached to their petition and response, respectively, confidential settlement negotiations and offers to compromise between Dollar Tree, Thriftway and/or Port Richmond, which is prohibited by Pa. R.E. 408(a). The proposed order attached to Port Richmond's response asks the court to strike without prejudice Dollar Tree's petition and the response of Thriftway.

Rule 408(a) of the Pennsylvania Rules of Evidence states: "Evidence of the following is not admissible on behalf of any party, when *offered to prove liability* for ... a claim that was disputed as to validity or amount, *or to impeach through a prior inconsistent statement or contradiction*: (1) furnishing of offering or promising to furnish — or accepting or offering or promising to accept — a valuable consideration in compromising or attempting to compromise the claim.... (Emphasis supplied).

In this case, any evidence of settlement negotiations involving Port Richmond was not offered to prove liability of any party or to impeach a prior inconsistent statement, but was merely offered in an attempt to enforce a purported settlement agreement between Dollar Tree and Thriftway. For this reason, the court shall not issue an order striking Dollar Tree's petition to enforce settlement agreement or Thriftway's response in opposition thereof.