J-A27025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CRISTY CAUCHON LAKHMNA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GAGANDEEP S. LAKHMNA | |
| Appellant | No. 984 EDA 2018 |

Appeal from the Order Entered March 19, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No: 8517 September Term, 2012

BEFORE: BOWES, STABILE, and McLAUGHLIN, JJ.

MEMORANDUM BY STABILE, J.: **FILED APRIL 24, 2019**

Appellant, Gagandeep S. Lakhmna ("Husband"), appeals from the March 19, 2018 order enforcing the parties' rights under a postnuptial agreement. We affirm.

The trial court set forth the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> The parties are a formerly married couple who were divorced on February 22, 2016. Prior to the entry of the divorce decree, they entered into a postnuptial agreement, dated October 13, 2015, providing for resolution of claims for custody and support of their daughter […], alimony, and distribution of marital property. The postnuptial agreement was incorporated, but not merged, into the divorce decree entered on February 22, 2016.
>
> Pertinent to the real property at issue, the postnuptial agreement provided as follows:
>
> 7. PROPERTY DIVISION
>
> 7.3 <u>Real Estate Located at 1808 Spruce Street</u>:

7.3.1.    1808 Spruce Street, Unit 3, Philadelphia PA (appraised value of $1.3 million) shall be transferred to [Appellee, Christy Cauchon Lakhmna ("Wife")] in a fashion that minimizes the cost of the transfer.  This property shall be transferred to [Wife] free and clear of any liens, mortgages, or encumbrances, with clear title and with a valid Certificate of Occupancy. [Husband] shall be responsible to arrange the transfer of title to [Wife] by October 26, 2015.  Upon signing of this agreement, even prior to the transfer, [Wife] shall have exclusive decision making authority with regard to the current sale listing of this unit.

7.3.2.    Upon bona fide sale of 1808 Spruce Street, Unit 3, to a third party, the parties shall divide the net proceeds of 70% to [Wife] and 30% to [Husband].  Net proceeds shall be defined as customary costs of sale including, but not limited to, Realtor fees and transfer taxes.  No other expenses or mortgages or expenses [sic] shall be allowable as a deduction to the sales price. [Wife] shall have sole discretion regarding the sale of the property including, but not limited to, choice of Realtor and listing or sale price.  Should the property not be sold until after [Husband's] death, [Husband's] share of the proceeds shall be placed in a trust to [the parties' daughter].  This property shall not be sold for less than the higher of the fair market value at the time of sale or $1,450,000.00.

Postnuptial agreement, dated October 13, 2015, incorporated, but not merged, into the divorce decree entered on February 22, 2016.

Subsequently, in November of 2015, the parties amended Section 7.3.1. of the postnuptial agreement to allow for the placement of a $300,000 mortgage on 1808 Spruce Street, Unit 3 ("Unit 3") as collateral for paying off mortgages on other units in 1808 Spruce Street.  Husband was responsible for satisfying the $300,000 mortgage no later than April 15, 2016.  The amendment contained language nearly identical as that used in the original postnuptial agreement, that "[Wife] has exclusive decision making with regard to the listing of this unit."

Trial Court Opinion, 6/19/18, at 1-2.

Subsequently, Wife took out a $329,000 mortgage on 1808 Spruce

Street, Unit 3 ("1808 Spruce") to finance the purchase of a home at 1043 Oak

Lane, Philadelphia, where Wife now resides. She decided to rent 1808 Spruce rather than sell it. Wife's action spawned competing lawsuits. Aware of Husband's dissatisfaction with her actions, Wife commenced this action on February 20, 2018, pursuant to 23 Pa.C.S.A. § 3104,[1] with an emergency petition asking the family court to enjoin Husband from interfering with Wife's rights under the postnuptial agreement. Wife believes the postnuptial agreement does not require her to sell 1808 Spruce, and that nothing in the agreement precluded renting it. On February 22, 2018, Husband filed a civil action seeking, among other things, specific performance of the postnuptial agreement. Husband believes the postnuptial agreement requires Wife to sell 1808 Spruce.

---

[1] Section 3104 provides:

> **(a) Jurisdiction.--**The courts shall have original jurisdiction in cases of divorce and for the annulment of void or voidable marriages and shall determine, in conjunction with any decree granting a divorce or annulment, the following matters, if raised in the pleadings, and issue appropriate decrees or orders with reference thereto, and may retain continuing jurisdiction thereof:
>
> (1) The determination and disposition of property rights and interests between spouses, including any rights created by any antenuptial, postnuptial or separation agreement and including the partition of property held as tenants by the entireties or otherwise and any accounting between them, and the order of any spousal support, alimony, alimony pendente lite, counsel fees or costs authorized by law.

23 Pa.C.S.A. § 3104 (West).

Wife filed an amended petition on March 2, 2018 and Husband answered on March 16, 2018. On March 19, 2018, the trial court heard argument and entered the order on appeal.[2] The order reads as follows:

> This court exercises its jurisdiction pursuant to 23 Pa.C.S. §§ 3104, 3105 and 3223(F).
>
> [Husband's] rights to the property at 1808 Spruce Street, Unit 3, Philadelphia, PA are limited to 30% of the net proceeds upon the sale of the property as provided in the post-nuptial agreement between the parties.
>
> [Husband] shall not interfere in any rental of the property at 1808 Spruce Street, Unit 3, Philadelphia, PA, or the refinancing of the property at 1043 Oak Lane, Philadelphia, PA.

Order, 3/19/18.

In this timely appeal, Husband argues that the trial court erred in construing the postnuptial agreement. He claims the postnuptial agreement is ambiguous and that the court erred in not receiving evidence as to the parties' intent.[3] He further argues that the March 19, 2018 order is ambiguous and that it unfairly and unconstitutionally puts him out of court on his claims under the postnuptial agreement. Husband's Brief at 5-6.

This case presents an issue of contract interpretation, inasmuch as the family court construed the parties' postnuptial agreement pursuant to its jurisdiction under § 3104(a)(1). Our standard of review is *de novo* and our

---

[2] Husband's civil suit is not before us, but the parties represent that the trial court sustained Wife's preliminary objections on June 19, 2018.

[3] The agreement, at ¶ 19.1, provides that it was prepared jointly by the parties and their attorneys.

scope of review is plenary. ***Mastroni-Mucker v. Allstate Ins. Co.***, 976 A.2d 510, 517-18 (Pa. Super. 2009), ***appeal denied***, 991 A.2d 313 (Pa. 2010).

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. **When a writing is clear and unequivocal, its meaning must be determined by its contents alone.**
>
> Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This question, however, is not resolved in a vacuum. Instead, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. In the absence of an ambiguity, the plain meaning of the agreement will be enforced. The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

***Ramalingam v. Keller Williams Realty Grp., Inc.***, 121 A.3d 1034, 1046 (Pa. Super. 2015) (emphasis in original).

The parties' postnuptial agreement is not a model of draftsmanship, but we cannot accept Husband's conclusion that it requires Wife to sell 1808 Spruce. In ¶ 7.3.1, the post-nuptial agreement references a "current sale listing." In ¶ 7.3.2, however, it contemplates that a sale might not occur until after Husband's death. Husband would have us construe the agreement as requiring a sale within a reasonable time, citing ***Field v. Golden Triangle Broadcasting, Inc.***, 305 A.2d 689, 694 (Pa. 1973) (noting that where a

contract does not specify a time for performance, performance must be completed within a reasonable time). Husband claims that receipt of his 30% share of the net proceeds within a reasonable time is necessary to make him whole in terms of equitable distribution of the marital property. We cannot accept that argument, given that ¶ 7.3.2 contemplates that a sale could occur after Husband's death. Nothing in the contract indicates that Husband is of advanced age or terminally ill, and § 7.3.2 does not purport to apply in the event of Husband's accidental or tragic death before the completion of a sale. Thus, the agreement left open the possibility that a sale of the property, if it occurred at all, would take place at an indefinite time well into the future.

Furthermore, as set forth in *Ramalingam*, we must consider the whole contract in arriving at the parties' intent. Indeed, "a contract must be interpreted to give effect to all of its provisions." *Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 464 (Pa. 2015). We cannot interpret one provision in a manner that would render another provision null. *Id.* The postnuptial agreement provides that Wife will receive 1808 Spruce "free and clear of any liens, mortgages, or encumbrances, with clear title[.]" The trial court noted that such language is consistent with a fee simple absolute. *See* Trial Court Opinion, 6/19/18, at 6-7. While the precise nature of Wife's interest in 1808 Spruce is not directly before us, we agree with the trial court insofar as this language is not consistent with an enforceable obligation for

Wife to sell the property. A contrary interpretation would render the "free and clear…" provision null.

Next, we observe that ¶ 7.3.1 provides that 1808 Spruce was appraised at $1.3 million, but ¶ 7.3.2 precludes Wife from selling for less than $1.45 million or fair market value, whichever is higher. Taken together, these provisions contemplate a possible indefinite delay in the sale, in the event of Wife's inability to find a willing buyer at $150,000 above the appraised value. Thus, the agreement's reference to a "current" listing does not control the outcome, inasmuch as there is no guarantee that a current listing would have resulted in a successful sale. The agreement does not forbid Wife to take 1808 Spruce off of the market and relist it at some future date, as is evident from the fact paragraphs 7.3.1 and 7.3.2 reference Wife's unfettered decision-making authority (excepting the final sales price) with respect to the listing and sale of the property.

Finally, we must reject Husband's assertion that the postnuptial agreement precluded Wife from encumbering 1808 Spruce, as she did to finance the purchase of her current home. Husband claims the parties never intended for Wife to hold onto the property and use it as her "piggy bank." Husband's Brief at 22. To the contrary, ¶ 7.3.2 expressly provides that any other mortgages on 1808 Spruce will not be deducted from the net proceeds in the event of a sale. In essence, the postnuptial agreement provides that the outstanding balance of the $329,000 mortgage —or any other money Wife

borrows against 1808 Spruce—will come out of Wife's 70% share of the proceeds if and when she completes a sale. Husband will receive 30% of the net proceeds, as defined in the postnuptial agreement, regardless of any encumbrances Wife creates as owner of 1808 Spruce.

In summary, we agree with the trial court's conclusion that nothing in the postnuptial agreement requires Wife to sell 1808 Spruce "within a reasonable time." Several provisions of the contract unambiguously contradict such a finding. Furthermore, we agree with the trial court's conclusion that nothing in the postnuptial agreement precludes Wife from renting 1808 Spruce. The trial court correctly found that Husband's interest is limited to 30% of the contractually defined net proceeds in the event of a sale.

If Husband intended otherwise, he could and should have insisted on appropriate contractual terms. While we do not view the parties' postnuptial agreement as a model of draftsmanship, we cannot, under the guise of contractual ambiguity, rewrite it in terms more favorable to Husband. Rather, we must construe a contract to give effect to all of its terms. Husband would have us read significant portions of paragraphs 7.3.1 and 7.3.2 out of the contract. The law does not permit that result.

Next, we consider Husband's argument that the trial court's order is ambiguous and that it unfairly and/or unconstitutionally puts him out of court and leaves him with no means of enforcing his rights under the postnuptial

agreement. Husband cites no law in support of his argument that the order is ambiguous, and the only prejudice he claims stemming from the trial court's order is his lack of success in the related specific performance action. In our view, the order states, quite plainly and correctly, that Husband's interest in 1808 Spruce is limited to a 30% interest in the net proceeds of a sale, if any, and that he cannot prevent Wife from renting 1808 Spruce.

Husband's civil action is not before us, and therefore we express no opinion on it. If it concludes with a final order adverse to Husband, he may appeal. Whether the outcome of this action forecloses relief in Husband's civil action or any other proceeding will be a matter for another court to decide.

Order affirmed.

Judge McLaughlin joins this memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/19